(No. 52702.—

*In re* MARRIAGE of ALBERT ASCHWANDEN, Appellant, and EDITH BRIGITTA ASCHWANDEN, Appellee.

*Opinion filed September 29, 1980.*

Rosenberg, Rosenberg, Bickes & Johnson, Chartered, of Decatur (Wayne L. Bickes, of counsel), for appellant.

Richard J. Welsh and Richard L. Heavner, of Welsh, Kehart & Shafter, P.C., of Decatur, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

On October 6, 1977, after 25 years of marriage, plaintiff, Albert Aschwanden, filed a petition for dissolution of marriage from defendant, Edith Aschwanden. Defendant counter-petitioned for legal separation and, thereafter, for dissolution of marriage. The circuit court of Macon County granted plaintiff's petition and ordered, *inter alia,* that plaintiff transfer to defendant stocks valued at

$120,000 but retain all other marital properties in his possession, that plaintiff pay to defendant, as maintenance, $15,000 per year for 10 years (later modified to 12 years) or until her death or remarriage, and that plaintiff pay $14,000 of defendant's attorney's fee. On appeal by defendant, the appellate court affirmed that portion of the judgment ordering dissolution of the marriage but reversed the remaining portion of the judgment and remanded the cause for further proceedings. (76 Ill. App. 3d 680.) We granted plaintiff leave to appeal.

Plaintiff and defendant, both born in Switzerland, were married there on May 31, 1952. Two weeks later they moved to New York, where both were employed. For approximately seven years, defendant worked full time as a dental assistant but left this employment when plaintiff began to work for his present employer, Archer-Daniels-Midland Company (ADM) in Minnesota. Shortly thereafter, defendant became ill and, subsequently, underwent three back operations. In 1963, defendant returned to work part time, again as a dental assistant. In 1969, the couple followed ADM's move to Decatur, Illinois, where they purchased a home for over $70,000. They had household help for about two years, after which defendant did the housework.

Plaintiff was transferred to Brussels, Belgium, in 1973, where his business responsibilities included entertaining customers of ADM. ADM executives often visited the couple's home, and several of them stayed overnight at various times. The couple occupied a two-story, seven-bedroom, four-bath villa, and though they had a full-time, live-in maid, defendant did the shopping and planned the meals.

In March of 1977, when plaintiff was transferred back to Decatur, the couple separated. Defendant rented an apartment in Lucerne, Switzerland, where her family lived. She began looking for work in the autumn of 1977

and, in February of 1978, found employment as a dental assistant. Defendant works 22 hours per week, earning about $500 per month, and testified that she cannot work more hours because of her back ailment. She also testified to her monthly expenses, and to the fact that her standard of living decreased since the separation. The testimony was conflicting as to the employment opportunities in the area where defendant lives, but, according to defendant, she is earning as much money as possible.

Plaintiff's income has increased steadily since he began his employment with ADM. In the three years ending with 1978, his income has ranged from $81,300 to $116,024. Through a stock-option plan for key management employees, under which stock options were awarded on a merit basis, plaintiff has acquired 37,400 shares of ADM stock. The cost of the shares to plaintiff was $129,675.29 and, as of the hearing date, their market value was $565,675. A relatively minor amount of other property is owned by the couple, and all of their property is marital property. (See Ill. Rev. Stat. 1977, ch. 40. pars. 503(a), (b).) The couple's net worth was calculated to be $543,310.57.

At the time of the hearing, plaintiff was 51 years old and defendant was 46. The couple has remained childless.

On April 25, 1978, when the case was called for hearing, section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)) required that contested trials be on a bifurcated basis, i.e., 48 hours must intervene between trial on the alleged grounds for dissolution and trial on the remaining issues. The parties, however, agreed to waive the 48-hour requirement and to present evidence at a single hearing.

Following the hearing, the court granted plaintiff's petition for dissolution, finding that plaintiff had proved the material allegations of his petition but that the defendant had failed to prove the material allegations of her

counter-petition. The court further found that plaintiff had made a greater contribution to the acquisition of the marital assets than had defendant, but that defendant lacked sufficient resources (from marital property apportioned to her as well as from that attainable through appropriate employment) to provide for her reasonable needs and support, so that defendant should receive maintenance from plaintiff. The order described earlier was then entered.

The appellate court utilized two separate bases for reversing all but that portion of the judgment which ordered dissolution of the marriage. First, the court held that the trial court's property award failed to meet the "just proportions" requirement of section 503(c) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), and that the maintenance and attorney's fee awards did not make the property award equitable. Second, the court held that under *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, the 48-hour waiting period under section 403(e) is mandatory and cannot be waived. The appellate court further ordered the trial court, upon remand, to take judicial notice of the value of the stock on the date of the further proceedings.

Plaintiff contends: (1) the trial court did not abuse its discretion in disposing of the marital property between the parties; (2) the appellate court erred by not considering the amount of maintenance awarded in reviewing the division of marital property; (3) the 48-hour waiting period requirement of section 403(e) is not applicable here because the case was not "contested"; and (4) the recent amendment to section 403(e) expressly permits the parties to waive the 48-hour waiting period and should apply to this case.

We note that the portion of the trial court's judgment dissolving the marriage of the parties has not been challenged; it is therefore affirmed.

As to the remaining issue, however, section 503(c) of

the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), which governs disposition of property, provides in pertinent part:

"In a proceeding for dissolution of marriage or declaration of invalidity of marriage, *** the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, inluding the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

Several of the foregoing numbered factors, which the court is to consider in dividing the marital property in "just proportions," are relevant here. Initially, we find to be without merit plaintiff's argument that the appellate court failed to consider the maintenance award, contrary to the dictates of section 503(c)(9). The appellate court's statement that "[t]he [trial] court's maintenance award and award of attorney's fees do not make the marital

property award equitable" (76 Ill. App. 3d 680, 682) demonstrates that the court did consider the maintenance award in determining that the marital property awarded defendant was insufficient.

We note that the Act expressly directs the court to consider contributions of a spouse as a homemaker or to the family. The evidence reveals that, although at times the couple employed domestic help, defendant contributed substantial services as a homemaker over the long duration of the couple's marriage. Moreover, she also helped to entertain ADM executives and customers. As noted by the appellate court, the marital property awarded to defendant represents only about 22% of the couple's net worth. Plaintiff's occupation and his long-standing employment with ADM afford him both a very high and steady income and the prospect of continued high income in the future. He is also assured of a generous pension upon retirement. His opportunity for future acquisition of capital assets is excellent. By contrast, defendant's station and health leave her with little opportunity to regain and maintain the standard of living to which the couple had become accustomed or acquire significant amounts of assets or income in the future.

We do not view the Act's property-disposition section, the constitutionality of which was upheld in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, as mandating an equal distribution of marital property. Rather the section provides the trial court with discretion to divide the marital property in what it considers to be "just proportions," taking into account the listed factors, along with any other factors that are deemed relevant in a particular case. According to the record herein, defendant's basic living expenses will require complete use of the maintenance award along with her present salary income. Based upon this fact and upon our foregoing review of the other facts and circumstances, we conclude that the trial court abused its

discretion in awarding defendant only $120,000 worth of stock out of the couple's $543,000 net worth of marital property. The trial court's judgment, therefore, other than that portion which dissolved the marriage of the parties, is reversed. The cause is remanded with directions that the trial court reassess and modify its marital-property division, in accordance with the guidelines set forth in section 503(c) of the Act, as well as take any other action which the court deems advisable. While we perceive some difficulty in assessing the value to be placed on the different forms of contribution, we caution against placing too much emphasis on monetary contributions over nonmonetary contributions. At all times, the court is to keep in mind that the ultimate objective is to achieve a division of property which is in "just proportions." Where the property available to the defendant spouse is sufficient to satisfy that spouse's needs and entitlements, the use of maintenance should be limited. (Auerbach, *An Introduction to the New Illinois Marriage and Dissolution of Marriage Act,* 66 Ill. B.J. 132, 137 (1977).) Thus, if sufficient marital property is found, an award of maintenance may be unnecessary. If there is not sufficient marital property, however, maintenance should be considered.

As a separate basis for its partial reversal of the trial court's judgment, the appellate court held that it was error to permit the parties to waive the 48-hour waiting period requirement of section 403(e) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)). The version of this section which was in effect during the trial and the first appeal provided:

> "Contested trials should be on a bifurcated basis with the grounds being tried first. Upon the court determining that the grounds exist, the court shall allow not less than 48 hours for the parties to settle amicably the remaining issues before resuming the trial."

The foregoing provision has been held constitutional and

the waiting period mandatory. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 61-62.) We note that, although no cross-examination was conducted by either side during the first portion of the trial which established the necessary grounds, each party had petitioned for dissolution of marriage from the other and each presented evidence in support of his or her petition, much of it conflicting. Furthermore, resolution of the remaining issues was strongly disputed. The trial, therefore, was "contested" within the meaning of section 403(e).

An amendment to this section, however, was approved just prior to the appellate court's opinion on denial of rehearing. Although not mentioned by the appellate court, the amendment expressly permits the parties to waive the 48-hour waiting period and proceed immediately to trial on the remaining issues. (Ill. Rev. Stat. 1979, ch. 40, par. 403(e).) Being procedural in character (see *Ogdon v. Gianakos* (1953), 415 Ill. 591, 595-96), this amendment applies retrospectively to this case so that the parties' waiver of the 48-hour period was valid. See *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 48; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 337.

For the foregoing reasons, the judgment of the appellate court is affirmed as modified herein.

*Affirmed as modified.*