*In re* MARRIAGE OF JUDITH BUTLER, Petitioner-Appellant, and LEONARD BUTLER, Respondent-Appellee.

First District (1st Division)    Nos. 81-0145, 81-0667 cons.

Opinion filed February 8, 1982.—Rehearing denied June 21, 1982.

832

Joseph G. Bisceglia, James H. Feldman, and Mary Katharine Ryan, all of Jenner & Block, of Chicago, for appellant.

Howard H. Rosenfeld and Alan M. Goldberg, both of Rosenfeld, Hafron & Shapiro, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is a consolidated appeal. In case No. 81-0145 Judith Butler appeals from a judgment entered October 31, 1980, ordering her to pay $250 per week in child support to Leonard Butler and from an order entered December 18, 1980, denying her motion to vacate the October 31, 1980, judgment. In case No. 81-0667 Judith Butler appeals from an order entered March 5, 1981, denying her petition for modification of the October 31, 1980, judgment.

Judith and Leonard Butler were married on August 18, 1962. There were three children born during the marriage: Leslie, Valerie and Adam. On July 24, 1972, a divorce decree which incorporated a property settlement agreement dissolved their marriage.

Under the terms of the decree and agreement, Judith Butler was given custody of the couple's children. Pursuant to a subsequent order entered on July 31, 1973, Leonard Butler assumed custody of the couple's three children. Seven years later, on September 29, 1980, Leonard Butler filed a petition requesting that Judith Butler be ordered to pay him child support.

On October 14, 1980, a hearing was held on Leonard Butler's petition for child support. The parties stipulated to the following facts: Leonard Butler had a net monthly income of $1371.04. Judith Butler's gross income was $30,899 in 1977, $47,742 in 1978, $63,628 in 1979 and during the first 9½ months of 1980 her gross income was $32,882. Judith Butler's net income was $25,599 in 1977, $37,368 in 1978 and $47,840 in 1979. Because Leonard Butler was employed on a full-time basis, he chose to place the children in a learning center, where they stayed and slept all week long, returning home only on weekends. The children's school expenses for a period of 10 months in 1980 totaled $9100. The ages of the children at the time of the hearing were 14, 12 and 10.

Leonard Butler testified that his total monthly living expenses were about $3000, $2000 of which, he concluded, were expenses "directly or

indirectly" attributable to the children. He had submitted to the court an affidavit listing $3722 in monthly expenses. The affidavit set forth that $1460 per month were expenses attributable to the children. He testified that he did not presently pay his sister the $750 per month listed in the affidavit to be applied toward the $29,600 he borrowed from her to maintain and support the children.

Leonard further testified that Judith had given him a total of $3000 in child support over the prior 3-year period; further, that he received unemployment insurance for approximately six months in 1980 and received Aid to Dependent Children during February of 1980 because he could not find a job. At the time of the hearing he did not have any money in the bank or own any stocks or bonds.

On cross-examination, when asked how he determined that two-thirds of his expenses were attributable to the children, Leonard responded that when he first assumed custody of the children in 1973, their expenses were $10,000 to $11,000 a year, but that those expenses had increased to about $22,000 or $23,000 a year at the time of the hearing. Leonard stated that he no longer had title to the parties' marital home and that he had conveyed his share of their equity to his sister in 1972. He stated that between 1977 and 1978 Judith sent him $50 a week in response to his requests for her assistance in supporting the children.

Judith Butler testified that she is employed as a full-time salesperson for Shaker Advertising Agency, receiving approximately $300 per week against a commission dependent upon her sales. She had approximately $5000 in the bank, a $34,000 mortgage on a house valued at approximately $60,000 and stock purchased at $2000.

During a 14-month period in 1979 and 1980, Judith had the sole care and custody of Leslie, one of the couple's three minor children. Judith stated that except during the period when she had custody of Leslie, she paid Leonard child support in the amount of $50 per week for 2½ years. During this period, in addition to the weekly payments, she bought clothing, shoes and glasses for the children. In June of 1979, Leonard told her that if she would take care of Leslie he would not require her to pay $50 per week. In 1977 she had a conversation with Leonard at which time he told her that he needed only $50 per week from her in meeting the children's expenses. Besides those two conversations Leonard never asked her for child support and never asked her for more than $50 per week.

Judith testified further that her present living expenses were about $1570 per month. Her 1980 earnings to and including September of 1980 equalled approximately $32,882. She projected her remaining 1980 earnings might be as little as $3000 due to the fact that the advertising business had declined in view of the economy and the fact that she had lost some accounts. She further testified that she determines how many people she sees in her job and how hard she works. She agreed with the conclusion

that she was earning about $3200 monthly at the time the child-support proceedings were instituted as opposed to about $4000 a month earlier.

On October 31, 1980, the trial court granted Leonard Butler's petition for child support and ordered Judith Butler to pay him a total of $250 per week in child support.

Judith then filed an emergency motion to vacate the order of October 31, 1980, and for a rehearing on the child-support petition pursuant to section 68.3 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 68.3.) After argument, the trial court denied Judith's petition, stating that "as soon as she sits down and prepares her tax returns for the year 1980, we would have documentary evidence [of her income for the year 1980] and she can come back in."

On February 11, 1981, Judith filed a petition for modification of the October 31, 1980, child support order. At a hearing on the petition on February 27, 1981, Morris Skall, vice-president and general manager of Shaker Advertising Agency, testified that the agency places recruitment advertising for its clients. Skall supervises the entire sales staff of Shaker Advertising, including Judith Butler. He described Judith's duties to include securing accounts, calling her accounts on the telephone, visiting them in person and assisting them with their recruitment needs as they relate to advertising.

Skall testified as to the condition of the recruiting advertising industry in the Chicago metropolitan area in 1980. During that year the advertising industry experienced a dramatic decrease in business resulting from the state of the national economy and the level of national unemployment. The general condition of the industry adversely affected Judith Butler's business during the latter portion of 1980 and her business decreased dramatically in comparison to the business she procured in 1979 and prior years. Her greatest loss of business occurred in the last quarter of 1980. Judith Butler's work efforts in 1980 and 1981 were stronger than her work efforts in 1979 because she had to work harder for 1980 and 1981 business. Further, Mr. Skall stated he did not believe Judith Butler had deliberately held down her earnings, nor would Shaker Advertising tolerate such behavior.

Mr. Skall testified to Judith Butler's current income as follows:

| Time Period | Earnings |
| --- | --- |
| 8/16/80-12/31/80 | $11,712.50 gross |
| 1/01/81- 2/11/81 | 3,801.89 gross |
| 8/16/81- 2/11/81 | 2,508.73 average monthly gross |
| 2/12/81- 2/20/81 | 600.00 gross |
| 1/01/81- 2/20/81 | 4,400.00 gross, or 628.00 per week. |

For the current year to date (January 1, 1981, through February 20, 1981), Judith Butler's gross income was thus $4400, or approximately $628 per week. Because 22% of her gross income is withheld for Federal and State taxes and social security payments, Judith Butler's income net of taxes from January 1 to February 20, 1981, averaged about $460 per week.

Mr. Skall also stated that certain of Judith Butler's other expenses which appeared on her 1980 Federal income tax return, including automobile and entertainment expenses, were reasonable, customary and necessary for her to generate sales. Judith Butler's accounts require her to travel 25,000 miles a year for business purposes.

Mr. Skall stated that Judith Butler is reimbursed by Shaker Advertising for one tank of gas each week. He also testified that Judith Butler's decrease in income between August 14, 1980, and October 14, 1980, resulted from the fact that she works straight commission and her billings dropped during that period. Finally, Mr. Skall stated that Judith Butler is ultimately responsible for her income in the sense that any commission salesman in any industry is responsible for his earnings.

Judith Butler testified that her total gross income for 1980 was $44,379 and her unreimbursed 1980 business expenses totaled $15,197. Her 1980 Federal income tax totaled $6,878; her 1980 social security tax totaled $1,588; and her 1980 Illinois tax she calculated at approximately $700. Thus, her total taxes for 1980 were approximately $9,166. Subtracting her unreimbursed business expenses and her 1980 taxes from her 1980 gross income, Judith Butler calculated that her net income available for personal expenses in 1980 equaled $20,016, or $385 a week.

According to Judith Butler's 1979 income tax return, her unreimbursed business expenses for that year totaled $12,449. Her 1978 income tax return reflected that her unreimbursed business expenses for that year totaled $14,122.

Judith Butler further testified that in October of 1980 she had $5000 in the bank, but at the time of the February 1981 hearing her two bank accounts contained approximately $1500. Judith Butler owned the same house she owned in October of 1980. The current mortgage on her home was approximately $33,000. She stated it would be difficult to calculate or project her 1981 income. During the final 2½ months of 1980 she earned approximately $10,000. Further, she testified, her earnings from January 1, 1981, to the date of the hearing (February 27, 1981) were substantially less than her 1980 earnings for the same period. She stated that her living expenses had not changed significantly since October 14, 1980. In 1980 she spent $9262 on business meals and conferences. She did not keep weekly automobile mileage records, but, at a minimum, 80% of her total 1980 automobile mileage was for business purposes. On recross, she stated that

20% of her automobile mileage is attributable to transportation between her home and her office.

Leonard Butler testified that he was currently employed as a newspaper representative for Hurst Advertising Service, a job he had had since July of 1980. According to his 1980 W-2 form, he earned $12,016.91 in 1980. He was unemployed for about six months, from February until July 9, 1980. He received an additional $5688 in unemployment compensation during that period. Of the $12,000 he earned in 1980, Leonard Butler earned $10,080 between July 31, 1980, and the end of that year. Of that $10,080, $617.90 was withheld for FICA, $1384.68 was withheld for Federal income tax and $206.18 was withheld for State income tax.

Between January 1, 1981, and the February 1981 hearing, Leonard Butler's gross income totaled $3,801.64. According to his pay stub for the two-week period ending February 6, 1981, his gross salary totaled $912.91. His net pay, after deductions, totaled $710.06. Leonard Butler stated that on October 31, 1980, his net monthly income totaled $1,371.04. He testified that since that time his net monthly earnings have increased by approximately 8%.

On March 5, 1981, the trial court entered an order denying Judith Butler's petition for modification, finding that there was not a sufficient change in circumstances since the prior hearing to warrant a reduction in the support order.

In case No. 81-0145 Judith Butler contends that the trial court abused its discretion in its award of child support because it improperly considered her past earnings, gave no weight to her recent decline in earnings and failed to properly assess Leonard Butler's ability to support the children.

The financial responsibility for the support of children is a joint and several obligation of each parent. (*In re Marriage of Adams* (1981), 92 Ill. App. 3d 797, 416 N.E.2d 316.) The factors to be considered in determining the amount of child support are the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs and the financial resources and needs of the noncustodial parent. (Ill. Rev. Stat. 1979, ch. 40, par. 505(a).) The determination of the proper amount of child support lies within the sound discretion of the trial court in each individual case and will not be set aside unless found to be contrary to the manifest weight of the evidence, thus showing an abuse of discretion. (*In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641.) We find no abuse of discretion here.

■■ It was stipulated that Judith's gross income was $30,899 in 1977, $47,742 in 1978, $63,628 in 1979 and during the first 9½ months of 1980 her

gross income was $32,882. She had living expenses of $1,570 per month. She argues that the $250 per week award is excessive because the trial court improperly considered her past earnings and gave no weight to the recent decline in her earnings. However, a court may properly consider past earnings in a situation where current income is uncertain. (See *In re Marriage of Reyna.*) Judith did not submit any evidence regarding business expenses at the October 14, 1980, hearing. Furthermore, the parties stipulated before the trial court that Leonard's net income was $1,371.04 monthly and Leonard testified that his monthly expenses were $3,000, $2,000 of which were attributable to the children. The court also heard evidence that Leonard left temporary employment in early 1980 and collected Aid to Dependent Children payments in February of 1980. We find that the trial court properly assessed Leonard's current ability to pay when it ordered Judith to pay $250 per week child support.

■■ Reviewing all the pertinent facts in the present case, we find that the award of $250 per week child support was not an abuse of discretion.

In case No. 81-0667, Judith contends that the trial court abused its discretion in refusing to modify the child-support award because Judith's decline in income and Leonard's increase in income since the October 14, 1980, hearing constituted a "substantial change in circumstances" sufficient to warrant a modification of the judgment.

Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 510(a)) provides, *inter alia*, that a modification of a judgment respecting child support may be made "only upon a showing of a substantial change in circumstances." The factors to be considered in making an award of child support are applicable to modification proceedings. (Ill. Ann. Stat., ch. 40, par. 510(a), Historical and Practice Notes, at 699 (Smith-Hurd 1980).) Petitions to modify child-support payments must be decided on the facts and circumstances of each case. Consequently, modifications of child-support payments rest within the sound discretion of the trial court, and this court will not interfere with that discretion in the absence of its abuse. *Robin v. Robin* (1977), 45 Ill. App. 3d 365, 359 N.E.2d 809.

■■ At the hearing on the petition for modification, Judith Butler testified that she had earned approximately $33,000 through September of 1980. She also testified that she earned approximately $10,000 during the balance of 1980. She stated that in 1980 her gross income was $44,379. Furthermore, she testified that her monthly expenses were about the same as they had been at the time of the October 14, 1980, hearing.

At the hearing on the petition for modification, Judith introduced evidence that her business expenses were over $15,000 in 1980 and argues that these expenses should be deducted from her gross income in de-

termining her ability to pay child support. Without regard to the propriety of these business expenses, we note that an undetermined portion of the business expenses for 1980 had been incurred prior to the October 1980 hearing and therefore do not represent any change in circumstances occurring since the entry of the October 14, 1980, order. We find that the trial court properly found that a modification of the child-support order was not warranted because of a decline in Judith's income. At the October 14, 1980, hearing, Judith projected she would earn only $3000 during the final 2½ months of 1980. However, in fact she earned over $10,000 during that time period. During the period beginning January 1, 1981, and extending through February 20, 1981, Judith earned $4,400 gross income. We find that the trial court could properly have determined that any decline in Judith's income since the October 14, 1980, hearing was not a "substantial change in circumstances" sufficient to warrant modification of the order. Furthermore, we find that the trial court could properly have determined that the small increase in Leonard's salary did not constitute a "substantial change in circumstances" sufficient to warrant a modification of the child-support order.

Therefore, we find that the trial court did not abuse its discretion in refusing to modify the child-support judgment.

The judgment and orders are affirmed.

Affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.