*In re* MARRIAGE OF DORIS McNEELEY, Petitioner-Appellee, and MARTIN F. McNEELEY, Respondent-Appellant.

First District (2nd Division)   No. 82—2157

Opinion filed August 16, 1983.—Rehearing denied September 27, 1983.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann and Alvin R. Becker, of counsel), for appellant.

Engerman, Erlich, Jacobs & Berman, Ltd., of Chicago (Allen C. Engerman, Barry A. Erlich, and Scott L. Davis, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:
Respondent, Martin F. McNeeley (Martin), appeals from a judgment dissolving his 32-year marriage to petitioner, Doris McNeeley (Doris).

On appeal Martin contends that the trial court abused its discretion in awarding to Doris the majority of marital assets and exclusive possession of the marital home for a period of five years; in awarding to Doris permanent maintenance; and in requiring Martin to pay $16,000 for Doris' attorney fees. Doris has cross-appealed from that portion of the judgment which requires her to pay $1,856 to her former attorney. For the reasons hereinafter stated, we reverse in part and remand for further proceedings.

Doris filed a petition for dissolution on June 9, 1980, but on May 21, 1981, she was granted leave to withdraw her petition for dissolution and to file a petition for legal separation and temporary maintenance. On May 22, 1981, the trial court ordered Martin to pay Doris $325 per week ($1,407.25 per month) as temporary maintenance and, in addition to pay the $642.54 monthly mortgage payment on the marital home in Deerfield, Illinois. On November 12, 1981, Doris was granted leave to withdraw her petition for separation and to file a petition for dissolution. Trial was held on November 18, 1981.

The parties were married on January 20, 1950, and separated on December 31, 1979, when Martin vacated the marital home. Three children were born to the marriage. At the time of trial, all had reached the age of majority. The parties' youngest child, David, age 20, was employed and living with Doris. There is no evidence that David contributed to household expenses. Doris, age 53, is a high school graduate with an additional three weeks of secretarial training. She stated that she suffers from arthritis in her hands and legs and bursitis in her shoulders but she was not receiving treatment or medication for these conditions. Doris had not been employed during the marriage but stated on cross-examination that prior to the marriage she was employed for 1½ to two years as a traffic manager at a Cleveland radio station. Doris admitted that she has not sought employment since initiating this action. Her only source of income was the temporary maintenance payments she received from Martin. An unsigned affidavit listing Doris' personal monthly expenses was made a part of this record. In this list of expenses, which totaled $4,050, was a $650 monthly mortgage payment, which at the time of trial was being paid by Martin, and $1,071 as estimated State and Federal income tax based on a projected income of $48,600 per year.[1] Doris stated that many of the expenses listed by her were estimated or

---

[1]It is not apparent from the record how the amount of $48,000 was determined. Martin speculates in his brief that this amount is based upon Doris' anticipated maintenance award.

were listed in anticipation of the money which she hoped to receive as a result of these proceedings.

Martin, age 55 and in good health, is a high school graduate with one year of college education and at the time of trial was employed as a television and radio announcer and newscaster by WGN Continental Broadcasting Company in Chicago. Martin introduced evidence which established that his projected gross income for 1981 was $96,000 to $97,000 ($5,650 net income per month). This projection included Martin's base salary and additional fees for special television and radio announcements. Martin filed an affidavit listing monthly expenses totaling $2,442, although he testified that his total monthly personal expenses were about $1,300. When the latter figure is combined with the mortgage and temporary maintenance payments, it appears that Martin's monthly expenses were approximately $3,349.

A stipulation admitted at trial shows that the parties' marital assets included the marital home, which on March 13, 1980, was appraised at $160,000 with a $24,000 mortgage; household furniture and furnishings valued at $20,000; Martin's pension valued at $26,000 (without regard to tax or withdrawal consequences); Doris' automobile worth $4,000 with no liens, and Martin's automobile worth $11,000 with a $10,000 lien; and $2,000 worth of stocks.

In addition to the marital assets, the testimony reveals that Doris had approximately $1,000 in cash remaining from her $1,250 share of the 1980 tax refund, and Martin had about $400 in cash in a savings account and $2,000 in cashier's checks, $1,250 of which was his share of the 1980 tax refund. Martin also owned about $2,500 in apartment furniture and furnishings.

At the conclusion of the testimony, the trial court took the case under advisement without argument. On December 23, 1981, the court rendered its findings but reserved entry of judgment pending a hearing on the issue of attorney fees. The trial court found that all of the assets of the parties were marital and were valued in accordance with the parties' stipulation. The court found that Doris' monthly expenses were $4,000 and that, in accordance with Martin's testimony, his monthly expenses were approximately $3,000. Because of the length of the marriage, the evidence of Martin's "present income" and the fact that Doris was unemployed, the court awarded to Doris permanent maintenance of $3,200 per month ($739 per week). The trial court further awarded the marital home to Doris for five years or until she remarried, requiring that she pay the mortgage with reimbursement upon sale of all principal reductions made by her on the mortgage. After five years the marital home was to be sold, Doris to

receive 65% of the proceeds and Martin to receive 35% of the proceeds. Each party was to share in the cost of any "major repairs" to the marital home in proportion to their respective interests in the sale proceeds. The court ordered that the marital home be placed in a land trust with the parties as tenants in common according to their respective interests.

The trial court also awarded to Doris the furniture and furnishings in the marital home and her automobile. It awarded to Martin his interest in his pension, the stocks and his automobile.

A hearing was held on March 31, and April 9, 1982, on the petition for attorney fees, following which the trial court ordered Martin to pay $16,000 to Doris' attorneys. Martin was required to pay the attorney fees in two equal installments, the first within 20 days and the second within 120 days of the entry of judgment. In addition, Doris was ordered to pay her former attorney $1,856 in four equal installments within 120 days of the entry of judgment.

A judgment for dissolution, incorporating the trial court's findings and the award of attorney fees, was entered on July 21, 1982, from which both parties now appeal.

I

■ Martin first challenges the property distribution made by the trial court and contends that the court abused its discretion in awarding to Doris the majority of the marital assets and exclusive possession of the marital home for a period of five years. Martin argues that this apportionment was arbitrary and failed to consider the relevant factors set forth in section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)).

It is well established that the touchstone of a proper apportionment is whether it is equitable in nature. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1132, 398 N.E.2d 126.) When apportioning marital property, the trial court must consider all relevant factors under section 503(c) which, in this case, include:

> "(1) the contribution or dissipation of each party in the acquisition, preservation or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;
> ***
> (3) the duration of the marriage;
> (4) the relevant economic circumstances of each spouse when the division of the property is to become effective ***;
> * * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

\* \* \*

(9) whether the apportionment is in lieu of or in addition to the maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1979, ch. 40, par. 503(c).

■ It is also well established that the trial court has broad discretion under the Act to apportion marital property in "just proportions" (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 971, 441 N.E.2d 336), and a court of review will not disturb that apportionment unless it can be clearly shown that the trial court abused its discretion. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 564, 425 N.E.2d 1146.) It has been held that an abuse of discretion is established if "no reasonable man would take the view adopted by the trial court." *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.

■ Here, the trial court divided the marital assets, totaling $189,000, by allocating to Doris total assets valued at $112,400 (approximately 59.8% of total) and to Martin, total assets valued at $76,600 (approximately 40.5% of total). It appears that when apportioning the marital assets, the trial court considered the length of the marriage, Doris' age and education, her employment background and absence from the labor market for more than 32 years, all of which strongly suggest that she would be unable to maintain the standard of living she enjoyed while she was married. On the other hand, the court found that Martin is a professional, earning a substantial income with a greater opportunity to acquire capital assets and additional income. Although Martin's challenge to the property distribution relies heavily on the fact that he was solely responsible for the financial contribution necessary to acquire and preserve the marital assets, it must be noted that this is but one factor to be considered by the trial court when determining property distribution, and a party's monetary contribution should not be overemphasized. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 38, 411 N.E.2d 238.) Here, it appears that the trial court weighed the relevant statutory factors and, in light of the parties' relative economic circumstances, we cannot conclude that it was unreasonable for the court to award to Doris a greater portion of the marital assets.

■ Martin maintains, however, that the combination of awarding

to Doris a majority of the marital assets plus exclusive possession of the marital home for five years, with credit for all reductions in principal of the mortgage, was an abuse of discretion. Martin argues that there is no authority to award a spouse exclusive possession of the marital residence when there are no minor children.

Courts, however, have found such awards to be reasonable when considering the totality of the economic circumstances of the parties. (*In re Marriage of Lukas* (1980), 83 Ill. App. 3d 606, 618, 404 N.E.2d 545.) In light of the economic circumstances of the parties here, and because their youngest child was living with Doris, we conclude that it was not unreasonable to grant her exclusive possession of the marital home for a limited time.[2] In addition, it was not unreasonable for the court to provide for reimbursement to Doris of all reductions in principal of the mortgage. As the mortgage payment, which includes principal, interest, costs and taxes, is made by Doris each month, the value of the marital home will be preserved and increased. It is, therefore, reasonable for Doris to recoup the costs of preserving Martin's interest in that marital asset.

## II

■■ ■ Martin next contends that the awarding of permanent maintenance to Doris was an abuse of the trial court's discretion.

Generally, the awarding of maintenance, like the distribution of marital property, is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless it amounts to an abuse of that discretion or is contrary to the manifest weight of the evidence. (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 507, 436 N.E.2d 228.) An award of maintenance is warranted where the court finds that the party seeking maintenance lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is unable to support herself through appropriate employment or is otherwise without sufficient income. (Ill. Rev. Stat. 1979, ch. 40, par. 504(a).) Section 504(b) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(b)) provides that the maintenance order shall be in such amounts and for such periods of time as the court deems just after consideration of all factors including:

"(1) the financial resources of the party seeking maintenance,

---

[2]We note a reference in Martin's brief to a partition action allegedly filed by him in Lake County Circuit Court. A party's right to partition of jointly held marital property, however, is subject to a court's disposition of marital property in accordance with section 503 of the Act. *In re Marriage of Kush* (1982), 106 Ill. App. 3d 233, 236, 435 N.E.2d 921.

including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

■ Here, the trial court awarded to Doris, $3,200 per month as maintenance until here death or remarriage. Martin argues that the amount of the maintenance award allows Doris to live in a manner beyond that which she enjoyed during the marriage. Our review of the record supports Martin's argument and fails to reveal evidence which would support the trial court's increase in the maintenance award from $1,407 per month as temporary maintenance to $3,200 per month as "permanent" maintenance. It appears that the trial court may have based this increase in maintenance on Doris' unsigned affidavit, listing her total monthly expenses as $4,050. However, there does not appear to be any evidence which would support this figure, especially when Doris' testimony established that many of the expenses listed were not actually incurred each month but she felt "it would be nice" to be able to afford them.

Additionally, when making the maintenance award, which amounts to nearly 40% of Martin's gross income, the trial court explained that it was "based upon the fact that [Doris] is unemployed" and because the court "saw no opportunity for employment for her in the foreseeable future." The court reasoned that, because of her age and her sparse employment record, Doris was "practically unemployable."

Our review of the record, however, does not support this finding. Although Doris has been away from the labor force for a substantial period of time, she is only 53 years old and it appears from the record that she has made no attempt to find suitable employment. The Act creates an affirmative obligation on the part of the spouse seeking maintenance to seek appropriate employment. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 568, 425 N.E.2d 1146.) We rec-

ognize that Doris' educational and employment backgrounds are limited but these limitations alone are insufficient to support a conclusion that she is "unemployable."

Although the trial court noted that if Doris becomes employed Martin could pursue any relevant remedies for modification of the maintenance award available to him under the Act, we believe that it would have been more appropriate for the trial court to reserve for review the maintenance award after a certain time period, giving Doris an opportunity to seek appropriate employment. (*In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 298, 426 N.E.2d 1066.) If at the end of such time period Doris has reasonably sought employment and failed to find anything suitable, the maintenance award could continue. If, however, Doris has not made any attempt to seek employment and begin to support herself, the maintenance payments could be reduced or terminated.

Based upon the foregoing, we conclude that the award of maintenance was in this instance an abuse of the trial court's discretion and contrary to the manifest weight of the evidence.

### III

Martin next contends that the order of the trial court directing him to pay $16,000 as Doris' attorney fees was unreasonable and an abuse of discretion. Martin argues that the property distribution and maintenance award puts Doris in as good or better financial position than he to pay her attorney fees. He further contends that in a case such as this which he terms as not complex or unusual, where the trial took one afternoon and where there was no dispute over the value or nature of the parties' assets, an award of $16,000 in attorney fees was excessive. We are compelled to agree.

While the allowance of attorney fees in dissolution proceedings rests within the sound discretion of the trial court and the exercise thereof will not be interfered with unless such discretion is clearly abused, a court of review will not hesitate to reduce an unreasonably high award. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1117, 421 N.E.2d 1308.) Fees granted should provide for fair compensation for reasonable and necessary services determined by considering the financial position of the parties, the skill and standing of the attorneys employed, the importance, novelty and difficulty of the questions raised, the degree of responsibility, the time and labor required, the usual and customary charge in the community, and the benefits resulting to the client. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 602, 400 N.E.2d 56.) A consideration of the financial

ability to pay the fees may limit the amount to be awarded, notwithstanding the fact that an extensive expenditure of time and labor was required by the representation. *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1118.

■■ We have noted our review of the financial positions of the parties in our discussion of other aspects of this case and we believe that the record supports the conclusion that Martin is in a superior position to acquire income and additional capital assets which would enable him to contribute to the payment of Doris' attorney fees. However, we believe the amount of attorney fees awarded in the instant case must be reconsidered.

■■ It is well established that a mere compilation of hours and hourly rates such as was provided in this case will not necessarily justify the award of attorney fees as requested. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1118; see also, *In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 651, 420 N.E.2d 55.) Doris' attorneys assert that they expended a substantial period of time "to discover possible hidden assets." However, the evidence in this record shows that all property involved was marital, and the parties stipulated that Martin's income was all salary with the exception of $2,000 worth of stocks. Many contested pretrial motions were presented but they do not appear to have presented issues which were novel or relatively complex from a family law viewpoint. See *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 314, 411 N.E.2d 988.

■■ The reasoning underlying the trial court's award of $16,000 in attorney fees is not apparent from the record, and we cannot conclude that such an award is supported by the evidence.

### IV

Finally, Doris cross-appeals that portion of the judgment which requires that she pay $1,856 to her former attorney. It is Doris' contention that since the trial court concluded that Martin was in a superior financial position and was therefore capable of paying her present attorney fees, the court should have reached the same conclusion with regard to the request for fees from her former attorney. In his reply brief filed with this court, Martin questioned the propriety of an award to Doris' former attorney for services which were apparently rendered prior to the commencement of this action and, therefore, not within the purview of section 508 of the Act. Ill. Rev. Stat. 1979, ch. 40, par. 508.

Because we have determined that the permanent maintenance award and award of attorney fees to Doris' present attorneys must be

reversed, we believe that the issue regarding the effect of section 508 on the request for fees by Doris' former attorney would best be addressed by the trial court upon remand.

For the reasons heretofore stated, we reverse the trial court's award of permanent maintenance and its award of attorneys fees, and remand the cause for further proceedings not inconsistent with this opinion. In order to assure a distribution in "just proportions" as mandated by the statute, we believe the trial court should review all interrelated property and maintenance awards, including the award of attorney fees.

Reversed in part and remanded for further proceedings.

STAMOS and HARTMAN, JJ., concur.