*In re* MARRIAGE OF CAROLYN WENTINK, a/k/a Carolyn Trutter, Petitioner-Appellant and Cross-Appellee, and GLENN WENTINK, Respondent-Appellee and Cross-Appellant.

First District (5th Division)   Nos. 83—1886, 84—0616 cons.

Opinion filed December 7, 1984.—Rehearing denied April 11, 1985.

Doss, Puchalski, Keenan & Bargiel, Ltd., and Barry Schatz, of Rinella & Rinella, Ltd., both of Chicago (Paul J. Bargiel, of counsel), for appellant.

Jones, Baer & Davis, of Chicago (Joseph W. Baer, Roderick E. MacRae, and Muriel Kuhs, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

In consolidated appeals from certain orders entered in an action for dissolution of marriage, petitioner contends that (1) the apportionment of the marital assets was inequitable; (2) the amount awarded her for child support was inadequate; and (3) the supplemental order requiring her to pay the fees of respondent's attorneys for this appeal was improper. Respondent cross-appeals from that portion of the order allocating the marital assets, also contending that the distribution was inequitable.

Judgment for dissolution was entered on July 8, 1983. No issues pertaining to those portions of the order dissolving the marriage and awarding custody of the minor child to petitioner are raised in this appeal. Testimony and evidence presented at hearings on the remaining issues established that the parties were married in 1970 and have one child—Holly—born in 1975. Petitioner, 38 years of age at the time of trial, has a bachelor's degree in business and worked in the commercial banking field for 2½ years prior to the marriage; but, except for volunteer work which she discontinued when Holly was born, she was not employed during the 12-year marriage. At the age of 25, she received the corpus of a trust established by her grandfather which consisted of more than 5,600 shares of AT&T stock, and upon the death of her mother, in 1977, she inherited approximately $500,000, of which $120,000 was placed in a trust for Holly. She had also acquired various items of furniture, jewelry, furs and silver before the marriage. Respondent, also 38 years of age, has a master's degree in civil engineering and has worked for a firm as a consultant in that field for more than 15 years, earning approximately $46,000 in salary and a $7,500 bonus annually at the time of dissolution. Prior to the

marriage, respondent had about $5,000 in savings, some furniture, and jewelry.

In 1971, the parties purchased the marital home for $80,000 with a down payment of $35,000—apparently obtained primarily from the sale of some securities—and a $45,000 mortgage. Several years later, they contracted for the construction of an addition to the home which ultimately cost over $200,000, payment therefor being made with dividends from certain of petitioner's securities and a $140,000 bank loan, $110,000 of which remained outstanding at the time of judgment. Throughout their marriage, both parties deposited their incomes into joint accounts, petitioner's income approximating 60% and respondent's 40% of the total contributions thereto. Household and family expenses were paid from those accounts and, on occasion, monies were withdrawn to purchase securities, both jointly and in their individual names. On July 8, 1983, the trial court entered its written order containing the following valuation and distribution of property:

| Nonmarital Property | Petitioner | Respondent |
| --- | --- | --- |
| Negotiable securities | $1,111,695 | |
| Jewelry | 40,000 | |
| Silverplate | 10,000 | |
| Furniture | 10,000 | |
| Furs | 2,000 | |
| Total | $1,173,695 | -0- |
| **Marital Property** | | |
| Marital residence | $275,000[1] | -0- |
| Negotiable securities | 52,200 | $ 49,400 |
| Furniture | 73,660 | 8,154 |
| Cash | -0- | 100,600 |
| 1979 Volkswagen | 4,000 | -0- |
| 1981 Cutlass | -0- | 6,000[2] |
| Total | $404,860 | $164,154 |
| **Liabilities** | | |
| Indebtedness on marital home | $153,000 | |
| Cash to be paid to respondent | 100,600[3] | |
| Total | $253,600 | -0- |
| Net award | $151,260 | $164,154 |

[1]This estimate of fair market value, which is about $5,000 less than the sum of the 1970 purchase price and the cost of the 1981 addition was based, in part, on a

In addition, the court ordered respondent to pay petitioner $350 per month for Holly's support and each party to pay his or her own attorney fees and costs. On August 4, 1983, petitioner filed a notice of appeal, and on August 17, 1983, respondent filed a notice of cross-appeal. Thereafter, respondent moved for and was granted attorney fees to defend petitioner's appeal, from which order petitioner takes the second appeal consolidated herein.

OPINION

Petitioner first contends that the trial court abused its discretion in apportioning the marital assets because it failed either to consider or give sufficient weight to her contributions to the acquisition and preservation of the marital estate.

■ It is well settled that the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1983, ch. 40, par. 501 *et seq.*) requires the trial court to divide the marital property in "just proportions," taking into account all relevant factors (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238), including those enumerated in section 503(d) of the Act, the most pertinent of which, for purposes of this appeal, are:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

\* \* \*

---

finding by the appraiser in 1982 that the house had depreciated in value by about $97,000, and that due to the economic recession, housing-market conditions were poor. Respondent has not contested this valuation.

²Although this automobile was specifically awarded to respondent, its value was omitted from the figures computed in the order.

³The trial court, in its order, gave petitioner the option of meeting this amount by assigning $22,700 of the jointly-held securities awarded her to respondent and paying him either the remainder in cash or the difference between $150,000 and the value of the securities he retained.

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

\* \* \*

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income \*\*\*." (Ill. Rev. Stat. 1983, ch. 40, pars. 503(d)(1) through (10).)

After considering all relevant factors, the court may, in its discretion, distribute the property in whatever proportions it deems equitable, and a reviewing court will not disturb that decision absent a showing that there was an abuse of that discretion (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925), which occurs only where the court acted arbitrarily and without the employment of conscientious judgment or exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866).

Applying these principles to the case at bar, we note initially that after hearing all the evidence, the trial court specified, in its written order, that in apportioning the marital property it had considered all relevant factors including, but not limited to, those set forth in sections 503(c) and (d) of the Act, and found that the distribution ultimately fashioned was equitable.

Nevertheless, petitioner posits that because the Act incorporates a shared-enterprise theory of marriage, "the distribution of marital property should be treated as nearly as possible like the distribution of assets incident to the dissolution of a [business] partnership" (see Ill. Ann. Stat., ch. 40, par. 503, Historical and Practice Notes, at 455 (Smith-Hurd 1980)); and thus, absent countervailing circumstances which emerge from the application of the other factors in section 503(d)—all of which, she maintains, relate only to "need" by the noncontributing spouse—the proportionate contributions of the parties to the marital estate must be reflected in the ultimate disposition thereof if it is to be deemed equitable. Arguing that her financial contributions accounted for at least 60% of the marital income and nearly all of the funds used for the down payment and construction of the marital residence; that she also contributed services as a homemaker, wife and mother; and that there are no countervailing circumstances, *i.e.*, "needs" of respondent which warrant an apportionment on any basis other than contribution, petitioner asserts that the division of property between her and respondent should have been 70-30%, or no less than 60-40%, respectively.

Petitioner cites numerous cases holding essentially that an order distributing marital property should recognize and compensate each party for his or her contribution to the marital estate. Since, as noted above, the Act specifically mandates consideration by the trial court of this factor, the basic tenet expressed in those cases is undisputed; however, we do not interpret them to stand for the proposition that absent circumstances establishing need, contribution is the only—or even the primary—factor to be considered. Moreover, the cases are, for the most part, factually dissimilar from the one before us.

For instance, in *In re Marriage of Goforth* (1983), 121 Ill. App. 3d 673, 455 N.E.2d 95,[4] the husband appealed an order awarding the marital estate—valued at $81,000—to the wife, and requiring him to assume $128,000 in debts incurred both during the marriage and after the parties had separated, and to pay maintenance, child support, and attorney fees. In modifying the order, the court found that the distribution "fail[ed] to recognize *any* of [the husband's] contributions to the marriage, by leaving him with only debts, Christmas decorations and a wall placque," and that it "[did] not put the parties in a position from which they can begin anew." (Emphasis added.) 121 Ill. App. 3d 673, 679, 455 N.E.2d 95, 99.

Similarly, in *In re Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189, the court reversed an order awarding the wife assets valued at $66,000 and the husband assets which—after computation of the outstanding debts thereon—had a negative value of $25,000. The court held that an order denying the husband *any* share of the net wealth accumulated during the marriage, while at the same time obligating him to satisfy all of the debts therefrom, could not be upheld absent the most extraordinary circumstances—which the court did not find—and ordered remandment of the case for reconsideration of the property distribution.

In *In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596, this court determined that the trial court abused its discretion in awarding the husband possession and one-half of the net equity in a home held in joint tenancy but which had been purchased with the proceeds from the sale of another home awarded to the wife upon dissolution of the parties' first marriage and an inheritance from her family. The court found that in view of the vast dis-

[4]Our research discloses that the opinion in *In re Marriage of Goforth* (1983), 121 Ill. App. 3d 673, 455 N.E.2d 95, was withdrawn to be republished at a later date.

parity in the parties' economic circumstances, the wife's serious health problems, the 15-month duration of the second marriage, and the fact that the order effectively took back everything petitioner had been awarded in the earlier judgment, the order was inequitable.

Clearly, the order appealed from here does not deny petitioner any share in the marital estate nor put her in a position from which she will be unable to begin anew; indeed, unlike the appellants in the cases above, she was awarded nearly one-half of the net marital assets.

In the case of *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336, the court did, as petitioner points out, hold that the order awarding the husband a greater share of the marital property than that awarded to the wife was justified by his greater contributions thereto; however, the court also stated that it had considered all other relevant factors as well; that the overall distribution was 49-46%—a division favoring the husband by only 3%; that he was also required to pay child support and one-half of the wife's attorney fees; and that the order was modified on appeal to award the wife an additional one-half interest in a savings account erroneously categorized by the trial court as nonmarital property, thereby narrowing the dispositional disparity even further.

An examination of *In re Marriage of Woodward* (1980), 83 Ill. App. 3d 253, 404 N.E.2d 575, a case which petitioner argues is "strikingly similar to this one," discloses that petitioner there was the primary wage earner throughout the marriage, working so that her husband could complete his education. Recognizing her contributions, the court awarded her the family home—the only significant marital asset—which had a net equity of approximately $3,400, noting that the wife would receive the home upon dissolution since the husband had received an education, largely through her efforts, during the marriage. Thus, the award was based not solely upon her financial contributions, but also upon a determination that each party was entitled to share in the benefits accrued during the marriage.

Finally, in *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730, it was held that the trial court did not abuse its discretion in a 60-40% distribution favoring respondent where all relevant factors were considered and it appeared that respondent was primarily responsible for the success of the family business, the principal asset of the parties; that it would have been impracticable to divide the business; and that petitioner received assets valued at over $500,000.

In summary, it is clear from a reading of the cases cited by petitioner that each was decided upon its own unique facts and circumstances as they related to the factors set out in section 503(d), and that in none did the trial court hold that absent a demonstration of need an order of distribution must reflect the respective contributions of each party.

■ Furthermore, notwithstanding the partnership approach to marriage taken by the Act, it has been noted that "[a] marriage is not a business relationship *** [and] the fact one party's contribution to the estate can be readily quantified in dollars in no way maximizes that party's interest over another's" (*In re Marriage of Stralow* (1981), 95 Ill. App. 3d 235, 238, 419 N.E.2d 1227, 1229); *i.e.*, it does not automatically entitle him or her to a greater share of the marital property (*In re Marriage of Theeke* (1982), 105 Ill. App. 3d 119, 433 N.E.2d 1311; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126). Indeed, our supreme court has cautioned against placing too much emphasis on monetary contributions in attempting to distribute the property in just proportions (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238) because, although contribution is an important consideration, it is but one factor to be weighed and balanced against all others (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635; *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748). We reiterate, and decisional law has consistently held, that to achieve a just apportionment, the trial court must also assess the relevant economic circumstances of each party, the value of the property—both marital and nonmarital—set apart to each spouse, the amount of income generated therefrom, and the reasonable opportunity for each party to acquire assets and income in the future. *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465; *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262; *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

■ In this case, the parties were married for 12 years throughout which respondent was gainfully employed and contributed nearly all of his earnings to the parties' joint accounts to meet family and household expenses and, as petitioner acknowledged in oral arguments, also made nonmonetary contributions to the family in his roles as husband and father, as did she as wife, mother, and homemaker; and while it is true that, based on a review of his earnings, which have steadily increased to the current annual level of approximately $50,000, his economic circumstances and potential for acquiring additional assets and income in the future are good, it appears

also that in view of petitioner's large nonmarital estate, which includes negotiable securities valued at more than $1,100,000 (generating nearly $100,000 income per year) and $73,000 in personalty, her economic circumstances and prospects for accumulation of additional wealth appear significantly greater. Moreover, she—like respondent— is a relatively young, college-educated person possessing certain skills and experience which we believe it reasonable to infer from the evidence afford her at least a moderate earning capacity should she choose to seek employment in the future. Therefore, under these circumstances, we find no abuse of discretion here by the trial court in the apportionment of the marital assets.

Having so determined, we need not engage in an extended and repetitive discussion in addressing respondent's cross-appeal, wherein he contends that the trial court failed to consider petitioner's nonmarital "fortune" when dividing the marital estate, and that in the light of the "staggering disparity" between the parties' personal assets, in order to achieve an equitable distribution, he should be given substantially all of the marital property. We do note, however, with respect to respondent's first assertion, that it is evident, both from the trial court's statement in its written findings that "a substantial amount of property was acquired by the petitioner for classification as non-marital property," and from the order itself, which lists the items and values thereof, that proper recognition was accorded thereto. In regard to respondent's second assertion, which is essentially that there should be an inverse relationship between the amount of nonmarital property owned by a spouse and the amount of marital property awarded to him or her, it is our opinion that this conclusion is predicated upon the same type of erroneous reasoning employed by petitioner in her argument that absent a demonstration of need, contribution should be the only basis upon which a property apportionment is made. Selection and consideration of only certain factors in structuring the division would contravene the legislative intent expressed in the language requiring the court to consider "*all* relevant factors" and would render meaningless the language preceding enumeration thereof, that "the court shall assign each spouse's non-marital property to that spouse." (Ill. Rev. Stat. 1983, ch. 40, par. 503(d).) In our view, respondent seeks to invade petitioner's nonmarital estate under the guise of procuring an equitable distribution of marital assets, and we therefore decline to disturb the property disposition fashioned by the trial court.

Petitioner next contends that the amount respondent was ordered to pay for Holly's support is grossly inadequate, given his fi-

nancial means and the child's standard of living.

Under section 505 of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 505) and precedential authority in this State, the financial responsibility for the support of a child is the obligation of both parents (*In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 436 N.E.2d 561; *Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95), and in a proceeding for dissolution of marriage, a determination of the proper amount of child support lies within the discretion of the trial court after consideration thereby of all relevant factors, including those set forth in section 505(a), which are:

"(1) the financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his educational needs; and

(5) the financial resources and needs of the noncustodial parent or parents." Ill. Rev. Stat. 1983, ch. 40, pars. 505(a)(1) through (5).

■ In the case before us, the evidence establishes that Holly is the beneficiary of two trusts valued in excess of $275,000, and while petitioner points out that respondent did not contribute thereto, the fact remains that irrespective of their source, the funds set aside for the child are sizeable and, absent some unexpected occurrence or other extraordinary circumstances, ensure that her needs will be met in the upcoming years and that her present standard of living need not be significantly altered by the dissolution. In addition, as previously noted, petitioner's personal assets yield an income of nearly $100,000, in contrast to respondent's earnings of approximately one-half that amount. In the light thereof, it is not unreasonable to expect petitioner to assume the remaining portion of the support obligation. Furthermore, although there is nothing in the record to suggest that Holly is in other than good physical and emotional health, we note that the trial court's order also obligates respondent to maintain health insurance for her and to contribute toward any of her uninsured extraordinary medical expenses. Considering the respective resources of the parties, as well as those of the child, we find no abuse of discretion by the trial court in ordering respondent to pay $350 per month toward her support.

Petitioner's final contention is that the trial court's order requiring her to pay respondent's attorneys $5,000 to defend her appeal of

the issues discussed herein was improper. Although her argument centers on the premise that respondent has failed to demonstrate that he lacks the ability to pay his own fees and that she is able to do so, our resolution of this issue does not rest on an analysis of the parties' respective financial positions.

Section 508(a) of the Act clearly provides that "[t]he court *** may order either spouse to pay a reasonable amount for *** the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with *** (3) [t]he *defense* of an appeal of any order or judgment under this Act ***." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 40, par. 508(a)(3).

■ Here, we note that although he was originally named as appellee in this appeal, respondent's participation herein has not been to defend, *i.e.*, to urge affirmation of the trial court's order; rather, in his cross-appeal—filed less than two weeks after petitioner's appeal—he, like petitioner, has sought reversal and/or modification thereof. In view of the clear language of section 503(a)(3), specifying that fee awards may be made for the *defense* of an appeal—ostensibly to eliminate the possibility that due to financial hardship a party might be foreclosed from securing adequate representation to protect whatever benefits were awarded in the order being challenged (see *In re Marriage of McBride* (1981), 102 Ill. App. 3d 84, 429 N.E.2d 867)—we do not believe that fees should be awarded here, where, although defending the court's order, respondent in his cross-appeal is at the same time attacking the order. Accordingly, the award of attorney fees to respondent for appeal under section 508(a) will be reversed.

For the reasons stated, the court order relating to the property distribution and child support is affirmed; however, the portion of the order requiring petitioner to pay appellate attorney fees of respondent is reversed.

Affirmed in part; reversed in part.

LORENZ and PINCHAM, JJ., concur.