LYNN GATWOOD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CHARLES GATWOOD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gatwood v. Commissioner
Dockets Nos. 35451-86[1]
; 36211-86; 17168-87; 24586-87
United States Tax Court
T.C. Memo 1989-544; 1989 Tax Ct. Memo LEXIS 560; 58 T.C.M. (CCH) 325; T.C.M. (RIA) 89544; October 2, 1989
Allan B. Roth, Sheldon P. Migdal, and Bruce C. Strohm, for the petitioner *561 in docket Nos. 35451-86 and 17168-87. David J. Gottesman, Suzanne M. Soltan, Joel C. Levin, and David T. Brown, for the petitioner in dockets Nos. 36211-86 and 24586-87. J. Burk McNamara, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Petitioner
Docket No.
Year
Deficiency
Lynn Gatwood
35451-86
1980
$  1,820
1981
4,378
17168-87
1982
5,923
Charles Gatwood
36211-86
1980
49,449
1981
37,700
24586-87
1982
22,984
After concessions, the issue remaining for our consideration is whether amounts paid by petitioner husband to his ex-wife represent alimony or a property settlement within the meaning of sections 71[2] and 215. FINDINGS OF FACT The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. [3]
*562 Petitioner Lynn Gatwood resided at 1528 Shire Circle, Inverness, Illinois, at the time her petitions in these cases were filed. Petitioner Charles Gatwood resided at 1727 Crystal Lane, Mount Prospect, Illinois, at the time his petitions in these cases were filed. Petitioners were married on January 4, 1956, and two children were born during the marriage. During the marriage, Mr. Gatwood acquired three corporations. In 1968, he incorporated C. Gatwood Erectors, Inc., a structural steel erecting company. Another entity, R. Gatwood Steel Erectors, Inc., was incorporated in the early 1970's. In 1975, R. Gatwood Steel Erectors, Inc., purchased R. Gatwood Contractors, Inc., a crane rental company, from Mr. Gatwood's uncle. This purchase was funded with cash and a note on which both petitioners were personally liable. During the marital years, Mr. Gatwood invested amounts inherited by him into R. Gatwood Steel Erectors and its subsidiary, R. Gatwood Contractors. These investments were treated as notes payable to the shareholders on the companies' financial statements and tax returns. However, petitioner husband presented conflicting evidence as to the amount of this indebtedness. *563 The R. Gatwood Contractors' balance sheet for the fiscal year ending April 30, 1979, lists Notes Payable-Shareholders as $ 28,197.28; the corporate income tax return for the R. Gatwood Steel Erectors consolidated group for the tax year ending April 30, 1979, shows loans from stockholders as $ 75,697.28; and an attorney's notes made during settlement negotiations list an amount indicated as " 1/2 inheritance" as $ 50,000. Approximately $ 50,000 inherited by Mr. Gatwood remained a part of the corporations at the time the divorce decree was finalized and the parties' settlement agreement was adopted by the Court. Mr. and Mrs. Gatwood were the only shareholders of the Gatwood corporations; Mr. Gatwood owned 75 percent and Mrs. Gatwood owned 25 percent of both C. Gatwood Erectors and R. Gatwood Steel Erectors. Petitioners were also the only officers of these corporations. Mr. Gatwood was responsible for the day-to-day operation, management, and promotion of these construction businesses. Mrs. Gatwood also worked for the company as a salaried administrative employee. The corporate offices were located at 2424 East Oakton Street in Elk Grove Village. This real estate was held in *564 joint tenancy by the Gatwoods. The couple also owned a residence in Palatine and commercial rental property located on Crossen Avenue in Elk Grove Village. These properties were acquired during the marriage. Mr. and Mrs. Gatwood began divorce proceedings in 1978. Throughout the proceedings and negotiations petitioners were individually represented by both an accountant and an attorney. Mrs. Gatwood's attorney, Mr. Hector, drafted the agreements ultimately signed by the parties. During the proceedings, Lynn Gatwood sought and was awarded temporary support. On August 4, 1978, the Circuit Court of Cook County entered an Order requiring Mr. Gatwood to provide her with the following monthly support: Food
$ 300.00
Payment of Mortgage
396.53
Automobile Expenses
170.00
Taxes, Insurance, Lawn
Care, Medical
200.00
Temporary Maintenance
680.00
To satisfy the requirements of this Order, Mr. Gatwood paid his wife $ 300 per week and paid, for her benefit, certain bills. In that regard, the amount that he paid to Mrs. Gatwood or for her benefit in 1979 was approximately $ 29,000. This amount, "grossed-up" for taxes, was considered in arriving at the $ 31,000 *565 annual payments in the property settlement agreement. Sometime in 1978, Mrs. Gatwood discontinued her job with the Gatwood companies to open a retail jeans shop called "Britches and Stitches." Mrs. Gatwood was engaged in this pursuit until she discontinued the operation later that same year. Thereafter, she was unemployed. Negotiations took place throughout 1978 and 1979. The parties agreed on an appraised net value for the marital home and two commercial real estate properties as follows: Marital House (Palatine)
$ 122,000
Commercial Rental Property (Crossen Ave.)
243,000
Gatwood Corporate Location (2424 East Oakton)
67,000
A major controversy during the negotiations involved the value of the Gatwood corporate stock. Ultimately, the parties agreed that the stock be valued at book value as per the April 1979 financial statements. The book value of the C. Gatwood and R. Gatwood companies on April 30, 1979 was a follows: R. Gatwood Steel Erectors and Subsidiary--
Shareholders Equity
$ 217,877.12
C. Gatwood Erectors--Shareholders Equity
175,328.44
$ 393,205.56
On December 5, 1979, a hearing was held before Judge Kanter in the *566 Circuit Court of Cook County, Illinois, regarding the grounds for dissolution of the marriage and the proposed settlement. During the hearing, Mr. Hector read a draft of the settlement into the record. The basic settlement provided that Mr. Gatwood would pay Mrs. Gatwood the total sum of $ 675,000. This sum was allocated as follows: $ 122,000 to the marital home; $ 243,000 to the commercial building located at 330 Crossen Avenue; and another sum of money equal in amount to $ 310,000 was allocable to maintenance and was payable on a periodic basis of a period of 10 years and 1 month. Other provisions in the draft agreement provided for the transfer to Mrs. Gatwood of an insurance policy, retention by each spouse of their personal articles and jewelry, a transfer to Mrs. Gatwood of title to a Cadillac, and retention by Mrs. Gatwood of all furniture and fixtures from the marital home. In drafting the settlement agreement, Attorney Hector intended that the periodic payments be made for Lynn Gatwood's support and maintenance. During the dissolution hearing, Mrs. Gatwood testified that she understood that the monthly payments would be chargeable to her as alimony and deductible by Mr. *567 Gatwood. However, shortly after the December 5 hearing, Mr. Hector and Mrs. Gatwood sought tax advice regarding the proposed settlement from Craig Stepnicka. Mr. Stepnicka is an attorney and a tax partner with the public accounting firm of Arthur Young. Mr. Hector informed Mr. Stepnicka that the family worth was $ 1,350,000 and that Mrs. Gatwood's share of the marital assets was worth $ 675,000. He also told Mr. Stepnicka that the "pot of assets" was comprised of only the marital home, the Crossen property, the Oakton property, and the Gatwood company stock. However, Mr. Hector failed to specify a value for this stock and to mention that other assets (personal property) were also transfered pursuant to the draft agreement. Based on the values provided by Mr. Hector for the real estate, Mr. Stepnicka "plugged" the value for the stock at $ 918,000. On the basis of the stock and real estate transfers, Mr. Stepnicka determined that the marital home and Crossen properties were given in exchange for Lynn's marital rights and that the $ 310,000 was given to her in exchange for her stock interest in the Gatwood companies and would not be taxable to her. He arrived at this result based *568 upon the following conclusions: Home (joint property)
$   122,000
Crossen (joint property)
243,000
Oakton (joint property)
67,000
C. Gatwood Erectors, Inc.
R. Gatwood Steel Erectors, Inc.
R. Gatwood Contractors, Inc.
918,000
$ 1,350,000
Based on the fact that Lynn was to get $ 675,000, Mr. Stepnicka then determined that she received the following in return for her marital rights and stock: Marital Home
$ 122,000
Crossen
243,000
Cash in exchange for 25 percent stock
($ 229,500) and Oakton ($ 67,000)
310,000
$ 675,000
In addition to these tax consequences, Mr. Stepnicka also advised Mr. Hector to delete the "maintenance" language in clause four of the draft agreement, but Mr. Hector refused to change this classification. Mr. and Mrs. Gatwood were divorced on March 3, 1980. On this date, a Judgment of Dissolution of Marriage was entered by the Circuit Court and it incorporated the final agreement styled Property Settlement Agreement executed by Mr. and Mrs. Gatwood on February 16, 1980. Petitioners also executed a supplemental Memorandum of Agreement (hereinafter "Memorandum Agreement") on February 16, 1980, which was not *569 incorporated into the settlement agreement. However, both parties and their representatives intended that together these agreements effectuate an approximately equal division of all the marital property. In fact, the agreement was drafted with the understanding that the state courts in creating equity tended to divide matters equally between the parties. The final settlement agreement was largely similar to the draft settlement described by Mr. Hector at the December 5, 1979, hearing. Clauses three and four of the final agreement provided as follows: (3) That, in consideration of the relinquishment by the WIFE of her marital rights, as set forth herein, and more particularly, as expressed in Paragraphs 16, 17, [4] and 18 hereof, the HUSBAND will execute and deliver to the WIFE, contemporaneously with the entry of a Judgment for Dissolution of Marriage in the within cause, good and sufficient Deeds of Conveyance of all of the HUSBAND'S right, title and interest in and to the following parcels of real property, the title to which has heretofore been held in Joint Tenancy by and between the parties hereto: (A) To the former marital home of the parties, commonly known as 234 Brookdale *570 Lane, Palatine, Illinois 60067 * * * * * * (B) To the commercial property commonly known as 330 Crossen Avenue, Elk Grove Village, Illinois 60007 * * * * * * (4) That, in addition to the conveyances hereinabove set forth in Paragraph (3), but as and for the support and maintenance of the WIFE, the HUSBAND agrees to pay to the WIFE, over a period of ten (10) years and one (1) month next following the entry of a Judgment for Dissolution of Marriage in the within cause, the total sum of THREE HUNDRED TEN THOUSAND DOLLARS ($ 310,000.00), payable monthly commencing on the first day of the first month following the month during which a Judgment for Dissolution of Marriage is entered in said Cause, at the rate of Thirty Thousand Seven Hundred Forty-Four and 81/100 dollars ($ 30,744.81) per year, or Two Thousand Five Hundred Sixty-One and 98/100 dollars ($ 2,561.98) per month, which sum shall bear no interest at any time hereafter. *571 That, as collateral security for the payment to the WIFE of the sums of money to be paid by the HUSBAND, in accordance with the provisions of this Paragraph, the parties agree that the title to the real property commonly known as 2424 East Oakton Street, Elk Grove Village * * * Illinois * * * shall remain in the joint names of the HUSBAND and WIFE for a period of two (2) years after the entry of a Judgment for Dissolution of Marriage in the above-entitled cause, at the end of which time the WIFE will execute and deliver to the HUSBAND a good and sufficient deed, conveying to him whatever interest she may have, in and to the subject real property; That, as additional collateral security for the purposes hereinabove recited, and to guarantee the performance by the HUSBAND of the matters and things by him to be performed by virtue of the terms, conditions and provisions of this Agreement, the certificates representing the shares of stock presently owned by the WIFE in the Illinois corporations known as "C. GATWOOD ERECTORS, INC." (25 shares) and "R. GATWOOD STEEL ERECTORS, INC." (250 shares) shall, upon the entry of a Judgment for Dissolution of Marriage in the above-entitled cause, *572 be endorsed by the WIFE for transfer to the HUSBAND, free and clear of any and all liens, charges and encumbrances of any kind; that the subject shares of stock shall thereupon be transferred on the books of the corporations involved into the name of the HUSBAND, who shall, forthwith, execute a "stock power" or "assignment separate from certificate" as to the certificates representing the said shares, and shall deliver the same together with the subject share certificates to the custody of the attorney for the WIFE, who shall retain the same; the said certificates to be delivered to the HUSBAND, or to his representative, as soon as all such performances on the part of the said HUSBAND have been completed pursuant to the provisions hereof, or have otherwise been guaranteed or provided for. * * * Another provision in the settlement agreement bearing on the disposition of the property was clause eleven, which provided for the retention by each spouse of personal effects and jewelry and the retention by Mrs. Gatwood of the furniture and fixtures in the marital home. A transfer of the use of a Cadillac and the payment of certain taxes on Mrs. Gatwood's behalf were also stipulated in *573 the Memorandum Agreement. Clause eight awarded custody of one minor son to petitioner wife. Also intended as part of the settlement, but not addressed in either agreement, was the distribution of pension funds to Mr. and Mrs. Gatwood just prior to dissolution. The total marital estate, including the stock of the Gatwood companies, was worth approximately $ 878,400. Between clauses three, eleven, the Memorandum Agreement, and prior transfers, Lynn Gatwood received $ 428,000, without considering the $ 310,000 in payments. Four hundred and twenty-eight thousand dollars is approximately half of the value of the total marital property. Under the terms of the agreements, Charles Gatwood acquired all of the corporate stock and the headquarters real estate. After transfers to his wife, Charles Gatwood received approximately $ 450,400. These values were determined as follows: Marital
Property
Lynn
Charles
Marital Home
$ 122,000 $ 122,000 Crossen
243,000 243,000 Furniture
5,000 5,000 Jewelry
32,400 27,000 $   5,400 Stock
393,000 393,000 Oakton
67,000 67,000 Pension Distribution
66,000 16,000 50,000  Subtotal
$ 928,400 $ 413,000 $ 515,400 Less: Inheritance
(50,000)
(25,000)
(25,000)
Total Marital Property
$ 878,400 $ 388,000 $ 490,400 Tax Payment
25,000 (25,000)
Car
10,000 (10,000)
Insurance
3,000 (3,000)
Surgery
2,000 (2,000)
Total
$ 878,400 $ 428,000 $ 450,400 *574 In 1980, 1981, and 1982, Mr. Gatwood deducted as alimony $ 25,620, $ 30,744, and $ 30,744 in payments made pursuant to clause four of the settlement agreement. Mrs. Gatwood treated these payments in part as: proceeds from the sale of her share of the Gatwood stock, proceeds from sale of the Oakton property, and as imputed interest income. Respondent disallowed both Mr. and Mrs. Gatwood's treatment of the payments, taking inconsistent positions in his deficiency determinations. OPINION We are called upon to decide whether the payments made pursuant to a divorce settlement agreement were part of a property settlement or whether they should be classified as alimony. We find that all of the payments in question are alimony and hold for petitioner husband and against petitioner wife. We accordingly hold against respondent in the husband's case and for respondent in the wife's case. Section 71(a) requires the inclusion, in a wife's gross income, of periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred *575 by the husband under a divorce decree or written instrument incident to divorce. Section 215 allows a deduction to the husband for payments made to his wife which are includable in her income under section 71. Pursuant to a valid divorce decree, Mr. Gatwood agreed to pay Mrs. Gatwood the sum of $ 310,000, commencing within 1 month from the date of the judgment and payable in periodic payments over a 121-month period. These payments were imposed under a decree of divorce as required by section 71(a) (1), and they qualify as "periodic payments" as that term is defined by section 71(c)(2). Since these payments were periodic and were imposed under a decree of divorce, the only remaining question is whether the payments are in discharge of a legal obligation or are installment payments made in satisfaction of a property settlement. The requirement that the payments be made in discharge of a legal obligation imposed "because of the marital or family relationship" means that they must be in the nature of support rather than a property settlement. Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); *576 Bishop v. Commissioner, 55 T.C. 720, 724-725 (1971); secs. 1.71-1(b)(4) and 1.71-1(d)(3)(i)(b), Income Tax Regs. Payments which are part of a property settlement are capital in nature and, therefore, not taxable to the recipient. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984); Thompson v. Commissioner, 50 T.C. 522, 525 (1968). Whether payments are in the nature of support or part of a property settlement does not necessarily turn on the labels assigned to the payments by the court in a divorce decree or by the parties in their agreement. Beard v. Commissioner, supra at 1283; Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975); Suarez v. Commissioner, 68 T.C. 857, 866 (1977); Joslin v. Commissioner, 52 T.C. 231, 236 (1969), affd. 424 F.2d 1223 (7th Cir. 1970); Thompson v. Commissioner, supra at 525. The issue is a factual one and requires an examination *577 of all the surrounding facts and circumstances. Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976); Hesse v. Commissioner, supra at 691. The issue in a property/support determination is whether the payments are made in consideration for the relinquishment of rights in currently held property. If there is any ambiguity in the decree or agreement with respect to the payments, the party arguing for a division of property or a property settlement must demonstrate that they have given tangible property rights in exchange for a share of the other spouse's separate property. Schottenstein v. Commissioner, 75 T.C. 451, 461 (1980). Foregoing specific rights given to a wife in her husband's property by state law is sufficient to support a division of property. 75 T.C. at 462. A wife may possess marital rights to property she does not "legally" own or to which she does not hold title. This *578 can occur where the state recognizes an equitable right of the wife to share in marital property held in her husband's name; such property being subject to "equitable distribution" under state statute. [5] Whether similar rights were conferred upon the parties in this case requires an examination of Illinois law. State law defines property rights while Federal law determines the tax consequences attendant to those rights. Hoffman v. Commissioner, 54 T.C. 1607, 1611 (1970), affd. per curiam 455 F.2d 161 (7th Cir. 1972); cf. Poe v. Seaborn, 282 U.S. 101, 110 (1930). The divorce of Lynn and Charles Gatwood was governed by the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) which became effective in 1977. Ill. Rev. Stat. ch. 40, par. 101 et seq. (Smith-Hurd 1980). The passage *579 of the Marriage Act introduced the system of equitable distribution to Illinois. Marriage Act par. 503, Historical and Practical Notes at 455 (Smith-Hurd 1980); Kujawinski v. Kujawinski, 71 Ill. 2d 563, 376 N.E. 2d 1382, 1388 (1978); Ficchi v. Commissioner , T.C. Memo. 1986-191. In determining a division of property pursuant to divorce, paragraph 503(a) of the Act requires that a distinction be made between "marital" and "non-marital" property. [6] Paragraph 503(b) provides that all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. In a dissolution proceeding, the court must initially assign non-marital property to the title-holding spouse. Thereafter, it is required to divide the marital property without regard to marital misconduct and in just proportions considering all relevant *580 factors. [7] Par. 503(c), Marriage Act. While equal distribution is not mandated under the statute, the property must be divided equitably, taking into account all relevant factors as defined by statute. In re Marriage of Aschwanden, 82 Ill. 2d 31, 44 Ill. Dec. 269, 411 N.E. 2d 238, 241 (1980); Stallings v. Stallings, 75 Ill. App. 3d 96, 30 Ill. Dec. 718, 393 N.E. 2d 1065, 1067 (1979). Thus, under Illinois law, a wife may acquire rights to a share of her husband's separately owned, marital property, and factors not necessarily related to her need, such as the duration of the marriage and the relative contributions of the parties, may properly be considered in effecting an equitable distribution of the property. *581 In the instant case, the judgment of dissolution merely incorporated the settlement agreement of the spouses. Neither the judgment nor the dissolution hearing contain any separate findings by the Illinois Circuit Court regarding an equitable division of the Gatwood's property. [8] However, the evidence of record shows that the agreement was drafted in conformity with the marital property concept and that the parties endeavored to achieve an equal division of property which would be acceptable to the Circuit Court. As we stated in Beard v. Commissioner, 77 T.C. 1275, 1284 (1981):
Unfortunately, because of the vexing problems which frequently arise in determining the nature and extent of a spouse's property rights under State law, this supposedly factual inquiry has all too often taken on a metaphysical aura as the courts have struggled to classify a particular payment as either support or property settlement, when, in reality, the payment possesses a hybrid nature sharing characteristics of both. * * * *582 In making our determination we will look at the following factors which, if present, indicate that payments are in the nature of a property settlement rather than a support allowance: (1) The parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets; (2) The recipient surrendered valuable property rights in exchange for the payments; (3) The payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient; (4) The payments are secured; (5) The amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during the marriage; (6) The need of the recipient was not taken into consideration in determining the amount of the payments; and (7) A separate provision for support was provided elsewhere in the decree or agreement. Beard v. Commissioner, supra at 1284-1285, and cases cited therein. The absence of one or more of the above factors may tend to indicate that the payments are more in the nature of a support allowance. Beard v. Commissioner, supra at 1284. *583 The parties in this case did not intend the payments at issue as part of the property distribution. The payments were intended solely as maintenance and support as indicated by several findings: (1) The language of clause four of the settlement agreement which closely tracks the requirements of section 71; (2) in drafting the agreement, it was intended that the payments be for support and maintenance; (3) the refusal to change this language even after consultation about the tax consequences of using this format; and perhaps most persuasive, (4) Mrs. Gatwood's agreement to treatment of the payments as alimony. Mrs. Gatwood had no remaining property rights to surrender in exchange for the $ 310,000 payments. Under Illinois law, she clearly had an equitable right to a just portion of the couple's marital property. In accordance with these concepts, the parties divided their property equally, with each party receiving, after adjustments, approximately half. With the exception of the inherited funds invested in the companies, all of the property discussed in the settlement agreements, including the Gatwood stock, was acquired after the marriage and constitutes "marital property" *584 as defined by Illinois law. Additionally, the value of the estate was reduced to reflect the allocation of the inherited funds to Mr. Gatwood. Although some evidence introduced at trial suggests that the value of the Gatwood corporate assets exceeded their book value, Mrs. Gatwood failed to carry her burden of proof as to this issue, and we therefore accept the use of book value for these assets. Accordingly, we have determined that Lynn Gatwood's portion of the marital property was valued at $ 428,000. She received property equal to this value between clauses three and eleven and the Memorandum Agreement. She also received some of this property through transfers made immediately prior to dissolution. Where this Court has found that * * * the wife had by other provisions received property equal in value to the interests she had in either her separate or marital property at the time of the divorce, so that the wife had no further tangible property rights that she could exchange for an interest in the husband's separate property, it has concluded that periodic payments in addition *585 to the above were for support or alimony. [Schottenstein v. Commissioner, 75 T.C. 451, 461 (1980); see also Joslin v. Commissioner, 52 T.C. 231, 237 (1969).] While the payments under clause four were fixed in amount, were not subject to any contingencies, and were secured, the amount of the payments, plus other property awarded under clauses three and eleven, the Memorandum Agreement, and through prior transfers, far exceeded the value of one half of the total marital property accumulated by the Gatwoods during the marriage. Moreover, the record indicates that Mrs. Gatwood's needs and the amount of her previous temporary support were considered in arriving at the $ 31,000 in annual payments. Lastly, aside from clause four, no other provision for support was provided elsewhere in the agreements. In the absence of five out of seven of the Beard factors, we hold that the payments under clause four of the agreement constituted support and are taxable to petitioner wife under section 71. Mrs. Gatwood argues that McCormick v. Commissioner, T.C. Memo. 1987-418, requires us to conclude that the payments were made in exchange *586 for valuable property rights and are not taxable to her. In McCormick, this Court evaluated the property/support distinction based on five factors: (1) Whether a fixed amount is stated in the agreement; (2) whether the payments are related to the income of either spouse; (3) whether the payments are to continue without regard to the remarriage or death of the wife; (4) whether the wife relinquishes property rights or gives other consideration in exchange for the payments; and (5) whether the husband's obligation to make the payments is secured. While Mrs. Gatwood would satisfy many of the above factors, when considering the state law requirements and the value of the marital property, we find that she had no uncompensated rights to exchange for the payments. This is the critical factor in the property/support distinction, and thus McCormick does not provide support for Mrs. Gatwood's position. Lastly, Mrs. Gatwood argues that under Illinois law, maintenance can be awarded only after the court has affirmatively found that the marital property awarded to the spouse is insufficient *587 to provide for her reasonable needs. Par. 504(a), Marriage Act. [9] Because no such finding was made by the Circuit Court, Mrs. Gatwood asserts that none of the $ 310,000 was for support or maintenance. As noted above, the Illinois Circuit Court was bound by the parties' separation agreement, unless it was found to be unconscionable. There is no indication in the record that the agreement was unconscionable or that the Court disagreed with the allocation of $ 310,000 designated as maintenance. Mrs. Gatwood also acknowledged during the settlement hearing that the $ 310,000 was alimony. Given that Lynn Gatwood was awarded temporary support by the Court, that she was awarded custody of one minor child, and that she was unemployed after the dissolution, maintenance payments were necessary and, more likely, appropriate. In any event we will not second-guess the state courts on these issues. *588 The payments in this case were made for Lynn Gatwood's support and maintenance. They are taxable to her under section 71 and deductible by Mr. Gatwood under section 215. To reflect the foregoing and the concessions of the parties, Decisions will be entered under Rule 155 in docket Nos. 36211-86, 17168-87, and 24586-87. Decision will be entered for the respondent in docket No. 35451-86. Footnotes
1. These cases have been consolidated for purposes of trial, briefing, and opinion.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years at issue, and all rule references are to the Tax Court's Rules of Practice and Procedure.↩
3. Respondent did not side with either petitioner and took a "stakeholder" posture in this case. No briefs were filed on behalf of respondent. Apparently, respondent will be satisfied whether we decide that the amounts are deductible by husband and includable by ex-wife, neither, or some combination thereof, as long as the parties' results are correlatively applied.↩
4. In paragraph seventeen, each spouse agreed to waive all rights and claims to the separate property of the other arising under state law as a result of the marital relationship such as dower, homestead, and inheritance. Presumably this would also include any equitable rights in the marital property arising under Illinois law.↩
5. For a more detailed discussion, see Grossbard, "Taxation of Divorce Settlements and the Property/Support Distinction," 55 U.S.C. L. Rev. 939, 949 (1982).↩
6. Paragraph 503(a) of the Illinois Marriage Act states that-- (a) For purposes of this Act, "marital property" means all property acquired by either spouse subsequent to the marriage, except the following, which is known as "non-marital property": (1) property acquired by gift, bequest, devise or descent; (2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent; (3) property acquired by a spouse after a judgment of legal separation; (4) property excluded by a valid agreement of the parties; (5) the increase in value of property acquired before the marriage; and (6) property acquired before the marriage. At the time of the Gatwood's divorce decree, the Illinois appellate courts were split on the question of whether the commingling of non-marital (i.e., inherited) property transmutes that property into marital property. Several state appellate courts held that non-marital property does not become marital property by virtue of being invested along with marital funds in a single asset. In re Marriage of Deitz, 76 Ill. App. 3d 1029, 32 Ill. Dec. 532, 395 N.E. 2d 762 (1979). However, the First District Appellate Court, which includes Cook County, held that failure to properly segregate non-marital property by commingling it with marital property evinces intent to have former property treated as part of the marital estate. Absent evidence to the contrary, treating non-marital property in this manner will result in its transmutation to marital property. Klingberg v. Klingberg, 68 Ill. App. 3d 513, 517, 25 Ill. Dec. 246, 386 N.E. 2d 517 (1979). In 1981, the Illinois Supreme Court adopted this position in In re Marriage of Smith, 86 Ill. 2d 518, 56 Ill. Dec. 693, 427 N.E. 2d 1239↩ (1981) (failure of non-marital property-holder to segregate that property will give rise to the rebuttable presumption that the property has been transmuted). This result was later modified by statute. Marriage Act par. 503(c), Supplement to Historical and Practical Notes at 61 (Smith-Hurd Supp. 1989). However, we do not find that these cases in any way change our findings with respect to the treatment of the inherited funds invested in the Gatwood corporations. 7. Pursuant to paragraph 503(c) of the Illinois Marriage Act, relevant factors include: (1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit; (2) the value of the property set apart to each spouse; (3) the duration of the marriage; (4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children; (5) any obligations and rights arising from a prior marriage of either party; (6) any antenuptial agreement of the parties; (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; (8) the custodial provisions for any children; (9) whether the apportionment is in lieu of or in addition to maintenance; and (10) the reasonable opportunity of each spouse for future acquisition of capital assets and income.↩
8. The Commissioner's Notes to sec. 307 of the Uniform Marriage and Divorce Act, upon which paragraph 503 of the Illinois statute is based, provides that if the parties have reached a mutually satisfactory settlement which is not unconscionable, the court will not be called upon to make a disposition of property under this section. Marriage Act par. 503, Historical and Practice Notes at 455, 474 (Smith-Hurd 1980). Additionally, paragraph 502(b) of the Marriage Act provides that "The terms of the separation agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds * * * that the separation agreement is unconscionable."↩
9. In pertinent part, paragraph 504(a) of the Illinois Marriage Act provides as follows: (a) In a proceeding for dissolution of marriage * * * the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and (2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or (3) is otherwise without sufficient income.↩