2021 IL App (1st) 201085-U

FIFTH DIVISION
DECEMBER 23, 2021

No. 1-20-1085 and 1-20-1303 Consolidated

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In* re MARRIAGE OF: | ) | |
| LINDA CELANI | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 14 D 6351 |
| | ) | |
| FRANKLIN CELANI, | ) | Honorable |
| | ) | Gregory E. Ahern, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's judgments granting an award of property in lieu of maintenance and an award of attorney fees for the appeal are affirmed.

¶ 2   The petitioner-appellee, Linda Celani, and the respondent-appellant, Franklin Celani, were married on October 19, 1974. On July 10, 2014, Ms. Celani filed a petition for dissolution of marriage. On October 16, 2019, the trial court issued its judgment, dissolving the marriage and granting an award of property to Ms. Celani in lieu of maintenance. On October 8, 2020, Mr. Celani filed a notice of appeal based on the allocation of property in the judgment. On October 15,

2020, Ms. Celani filed a petition for attorney fees which was granted by the trial court, to defend the appeal. Mr. Celani subsequently appealed that judgment, as well. On appeal, Mr. Celani argues that the trial court erred: (1) by awarding property in lieu of maintenance to Ms. Celani without calculating the amount of future maintenance; (2) by awarding property in lieu of maintenance to Ms. Celani without a reasonable estimate of future maintenance; (3) in its overall distribution of the marital property and assignment of debt; and (4) by awarding Ms. Celani attorney fees to defend the appeal. For the reasons that follow, we affirm the judgments of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      On October 19, 1974, the parties were married. They had 3 children, who are now adults and emancipated. On July 10, 2014, after nearly 40 years of marriage, Ms. Celani filed a petition for dissolution of the marriage. On August 13, 2019, the trial court held a two-day trial on the petition. Both parties testified.

¶ 5      Ms. Celani testified that she was 65 years old at the time of the trial. She worked as a nurse during her marriage between 1976 and 2017. In November 2016, she began experiencing issues related to what turned out to be a disabling autoimmune disease. As a result, she has been unable to work. She had enough paid time off so that she was able to maintain her employment until May 2017. However, the illness progressed and caused her physical condition to deteriorate, resulting in her total inability to work. The illness has also affected her day-to-day life and she has difficulty performing normal activities of daily living, such as showering and dressing herself. The illness also causes slurred speech and difficulty swallowing. She resides with her 87-year-old mother, who assists her with household chores.

¶ 6    Ms. Celani further testified that, at the time of the trial, she was receiving full Social Security disability benefits in the amount of approximately $30,840 per year. Pursuant to a disability policy which she had with Lincoln Financial, she also received about $42,000 or $43,000 a year, which would terminate after August 26, 2020. After that date, she could reapply for the policy with no guarantee of receiving any funds.

¶ 7    Mr. Celani testified that he was a self-employed attorney. He practices in the areas of workers' compensation, personal injury, criminal defense, and appellate law. Mr. Celani testified that he did not know how much money he made between 2011 and 2018, in part because he did not file income taxes for those years as he could not afford to pay to prepare them. The court further inquired about his income, as follows:

"THE COURT: So, in 2011, you were working as an active attorney, correct?

[MR. CELANI]: I was working as an attorney.

THE COURT: And you made income?

[MR. CELANI]: I did.

THE COURT: Okay. In 2012, on April 15th of 2012, you were supposed to file tax returns and you—and I assume based on being a lawyer, you knew how much you had made that year?

[MR. CELANI]: Why do you—

THE COURT: Regardless whether you filed or not, you know how much— I mean, you knew how much your bank account was at the time?

[MR. CELANI]: I didn't. I did not know. I did not know then and I do not know now. I never totaled up any figures. I never hired an accountant to do that. I didn't have the funds to do that. Now, when I say I don't—

THE COURT: Can you explain—

[MR. CELANI]: Yeah. Let me explain that. When I say that I wasn't in a position to do that, I don't mean that on any given day there might not have been funds in an account where I could have afforded to do that. But I had other obligations. I had obligations to clients. If a case necessitated taking a doctor's deposition, I had to make sure there was—if I was going to continue practicing at age 60, whatever it was at the time, 60, 62, 63, if I was going to continue practicing, I had to make sure that there was sufficient funds on hand that I could conduct depositions if I needed to conduct depositions, that I could order medical records if I needed to order medical records, that I could pay for court reporters' fees if I needed to pay court reporters' fees, that I could pay my rent and other overhead, and on any given point in time, and I think this is pretty much true of throughout, if you want to shortcut things, unless I was able to get to the marital fund that were being held in escrow, I asked the court to allow me to do—."

Mr. Celani's testimony about his income for the seven years prior to trial was consistent, in that he claimed to be unaware of how much income he made during those years.

¶ 8    Ms. Celani's attorney then asked if Mr. Celani kept books and records regarding his law practice in 2011, to which he responded that he just kept escrow account records. Mr. Celani was later asked if, pursuant to the court proceedings, he hired an accounting firm to prepare tax returns for him for the years 2011 through 2014. He answered that that was his recollection, but he was

not sure about the exact years. When shown the prepared returns for 2011, Mr. Celani said, "I haven't seen the 2011 return. I never analyzed the 2011 return. I never discussed the 2011 return. I don't know how accurate it is. And I don't remember what it says as we're sitting here today." His answers were consistent with his responses for his tax returns for the years 2012 through 2014. Specifically, he denied knowledge of his income for those years. He admitted that he believed he gave the bank statements and canceled checks to the accounting firm to prepare the unfiled tax returns for each of those years.

¶ 9       Mr. Celani testified that he did not have tax returns after the year 2014, but instead, provided financial disclosure statements for the period from 2015 to 2018. He also admitted to leasing a 2016 BMW convertible, for which he made a down payment of $10,000 in 2016 and had monthly payments of $665. He testified that, at the time of entering into the lease, he believed he was in a financial position to afford the vehicle. Subsequently, there was a deficiency judgment on the vehicle because he could not make the payments.

¶ 10      At the conclusion of the two-day trial, the trial court took the case under advisement. On October 16, 2019, the court issued its judgment in a 15-page written order, dissolving the marriage. When making credibility determinations, the court found Ms. Celani credible and that she provided current documentation which assisted the court in assessing her assets and liabilities. The court found that Mr. Celani was not a credible witness, stating:

>    "[Mr. Celani] frequently failed to answer questions in a forthright manner regarding his income. He testified that he could not afford to file tax returns for the years 2011, 2012, 2013, and 2014, nor could he afford to file returns for the years 2015, 2016, 2017, and 2018. He further testified that he could not afford to pay his life insurance policy premiums

or to purchase furniture, including a bed, and as a result thereof is forced to sleep on the floor of his residence. Nevertheless, the evidence showed that [Mr. Celani] inherited a residence from his mother in 2011 with a fair market value of $220,000.00, he inherited an American Funds account with a balance of $129,324.41 as of December 31, 2013, he earned $219,168.00 in 2013, and he leased a BMW in 2016 with a down payment of $10,000.00 and a monthly payment of $665.00 thereafter."

¶ 11 The trial court found the balance of the escrow account from the sale of the marital residence after all advances, to be valued at $181,091.61; the Lincoln 401(A) Plan, to be valued at $156,928.54; the Lincoln 403(B) plan, to be valued at $317,256.04; the 2012 Ford Focus, to be valued at $5,870; the 2004 BMW, to be valued at $1,689; the State Farm Life Insurance policy, to be valued at $3,870.16; and Mr. Celani's non-marital residence, to be valued at $220,000. These assets comprised the marital and non-marital property. After considering the maintenance factors cited in section 504 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504 (West 2018)), the court determined that Ms. Celani was entitled to maintenance to "meet her reasonable needs as a result of her disability and inability to work" and that Mr. Celani was not entitled to maintenance. The court then explained that it was able to award property in lieu of maintenance and found that, "[b]ased on the testimony and the evidence submitted, a disproportionate award of property to [Ms. Celani] in lieu of maintenance is the only realistic way to provide for the parties' futures." The court noted it was unable to determine Mr. Celani's income since he was self-employed, does not keep books or records aside from bank statements and canceled checks, and testified he did not know what his income from 2011 through 2018. The court further found:

"[Mr. Celani's] long history of failing to file federal and state income tax returns and report his income as required by federal and state law is indicative of his attempts to avoid any support obligation to [Ms. Celani] by making his income difficult to establish and would result in continued cost of litigation regarding future applications and modifications of maintenance. [Ms. Celani], in her disabled state and limited income, is in no position to return to this Court in the future on issues of maintenance.

The testimony and documentary evidence reveal that [Mr. Celani] routinely fails to satisfy his financial obligations including payment of income taxes, vehicle payments, life insurance policy premiums, and office space rent. In light of [Ms. Celani's] disability, her needs as a result thereof, and her inability to work, it is essential that she be able to plan for her future with certainty. The evidence presented at [t]rial suggests that neither [Ms. Celani] nor [Mr. Celani] will be able to plan for their futures with certainty in the event [Ms. Celani] is awarded maintenance. An award of maintenance leaves [Ms. Celani] vulnerable to non-payment thereof and said maintenance would cease upon [Mr. Celani's] death, potentially leaving [Ms. Celani] without sufficient funds at the end of her life. Further, an award of maintenance would perpetuate [Ms. Celani's] dependence on [Mr. Celani] and prevent the parties from permanently separating their lives.

* * *

The parties have stipulated that [Ms. Celani's] Lincoln Financial 401(A) Plan has a value of $156,928.54 as of June 30, 2019[,] and her Lincoln Financial 403(B) Plan has a value of $317,256.04 as of June 30, 2019. The combined value of the Plans is $474.184.58. Assuming arguendo that [Ms. Celani] received only 50% of the retirement assets although

- 7 -

a disproportionate share would be more appropriate given the factors set forth in Section 503 of the Illinois Marriage and Dissolution of Marriage Act, that would leave the sum of $237, 092.29, which [Ms. Celani] shall receive in lieu of maintenance. Said award of property in lieu of maintenance is appropriate as it reduces the inequality between the parties and allows [Ms. Celani] to become self-sufficient. Additionally, it furthers the goal of permanently separating the lives of the parties [*sic*], it allows them to plan for their futures with certainty, and reduces the possibility of future litigation on the issue of maintenance."

¶ 12      The trial court stated it would not consider Mr. Celani's federal and state income tax debt and noted that Mr. Celani had multiple opportunities to pay that debt based on his income and inheritance but instead spent money on other things, including a down payment for the lease of a BMW. The court stated that Mr. Celani cannot request that Ms. Celani be responsible for those tax debts. The court dissolved the marriage, awarding Ms. Celani 100 percent of her retirement plans, 50 percent of which was in lieu of maintenance, the 2012 Ford Focus, and $86,046.20 from the escrow account, containing the proceeds of the sale of the marital home and subtracting advances, which she took from the account. Mr. Celani was awarded $95,045.41 from the escrow account, which was half of the remaining funds plus a credit in the amount of $8,999.21 to equalize the advance, the 2004 BMW, 100% of his life insurance policy, and his non-marital residence. The court made each party responsible for his or her own attorney fees.

¶ 13      In November 2019, Mr. Celani filed a posttrial motion to modify the judgement or, alternatively, requesting a new trial. His posttrial motion was denied on October 8, 2020. That same day, Mr. Celani filed his notice of appeal (No. 1-20-1085). Mr. Celani filed a motion to stay

enforcement of the judgment pending appeal. On October 15, 2020, Ms. Celani filed a petition in the trial court, for attorney fees to defend the appeal. On November 4, 2020, she filed a response to Mr. Celani's motion to stay enforcement of the judgment. On November 6, 2020, the trial court granted the motion to stay the judgment pending appeal as to the 50 percent award[1] of Ms. Celani's retirement funds in lieu of maintenance and granted Ms. Celani's petition for attorney fees to defend the appeal. On December 8, 2020, Mr. Celani timely filed his notice of appeal[2] (No. 1-20-1303) challenging the award of attorney fees to Ms. Celani for the appeal. Subsequently, Mr. Celani moved, before this court, to consolidate appeal No. 1-20-1085 with appeal No. 1-20-1303. This court granted that motion and consolidated the two appeals.

¶ 14                                    ANALYSIS

¶ 15    We note that we have jurisdiction to consider these matters, as Mr. Celani filed a timely notice of appeal following each judgment that he now challenges. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 16    Mr. Celani makes numerous arguments, which essentially amount to the following issues on appeal: (1) whether the trial court erred when it awarded property in lieu of maintenance without first considering the statutory maintenance guideline amount; (2) whether the trial court's division of marital property was an abuse of discretion; and (3) whether the trial court erred in awarding attorney fees to Ms. Celani to defend the appeal. We take each issue in turn.

---

[1] The trial court noted that the appeal was brought because of the court's allocation of 50% of Ms. Celani's pension plans, which was awarded in lieu of maintenance. As a result, the trial court stayed the judgment as to 50% of Ms. Celani's pension plans, which had been awarded in lieu of maintenance.

[2] November 11, 2020, November 26, 2021, and November 27, 2021, were court holidays.

¶ 17                         Property in Lieu of Maintenance Award

¶ 18    Mr. Celani first argues that the trial court erred when it awarded property in lieu of maintenance. He does so without citing to any caselaw outside of cases about statutory interpretation and does not cite to any part of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/501 *et seq* (West 2018)). Mr. Celani's argument revolves around the language stating "in lieu of maintenance" which he argues means maintenance must be considered and calculated before the court can make a property award.

¶ 19    While Mr. Celani does not direct this court's attention to section 504(b-2) of the Act (750 ILCS 5/504(b-2)(1), (b-2)(2) (West 2018)), it is nonetheless on point for his contention. In that portion of the statute, it states:

     "In each case involving the issue of maintenance, the court shall make specific findings of fact, as follows:

     (1) the court shall state its reasoning for awarding or not awarding maintenance and shall include reference to each relevant factor set forth in subsection (a) of this Section;

     (2) if the court deviates from applicable guidelines under paragraph (1) of subsection (b-1), it shall state in its findings the amount of maintenance (if determinable) or duration that would have been required under the guidelines and the reasoning of any variance from the guidelines."

¶ 20    In this case, the trial court determined that Ms. Celani was entitled to maintenance. The court deviated from the maintenance guidelines without making an explicit finding of the amount of that maintenance. However, the language of the statute is clear when it states that the trial court is to make findings of the amount of maintenance *if determinable*. Here, Mr. Celani has not paid income taxes for at least seven years and is self-employed. In his testimony, when asked

about his unfiled tax returns from 2011 to 2014 prepared by a company pursuant to a court order in this proceeding, he said he had not reviewed them and was not sure about their accuracy. This was despite the fact that he had provided the bank statements from which the tax returns in question were prepared. Due to Mr. Celani's less than forthcoming answers, the court found his testimony incredible. For example, he testified that he could afford to put down a $10,000 down payment to lease a BMW but could not afford to pay someone to file his income tax returns. The court stated clearly that it "was unable to determine [Mr. Celani's] income as he is self-employed, does not keep books and records aside from bank statements and canceled checks, and testified that he did not know what his income was from 2011 through 2018." Mr. Celani cannot be permitted to impede, whether intentionally or unintentionally, the court's efforts to assess his income and then complain on appeal that the trial court did not do so. See *Mcmath v. Katholi*, 191 Ill. 2d 251, 255 (2000) ("A party cannot complain of error which he induced the court to make or to which he consented."). Additionally, the trial court determined, given Ms. Celani's disability she needs certainty regarding providing for her needs in the future. Further, she cannot rely upon Mr. Celani's timely payments. Also, it would be a hardship for her to come back to court to ask for future modifications of maintenance. As such, the court did not err by not *explicitly* stating the maintenance amount Ms. Celani was due *before* awarding property in lieu of maintenance.

¶ 21    Mr. Celani also claims that the trial court erred by awarding property in lieu of maintenance where it bore no rational relationship to any estimate of future maintenance. As noted, due to his testimony and issues with Mr. Celani's accounting regarding his legal practice, it was impossible to accurately assess his income. "The purpose of the invited error doctrine is to prevent

a defendant from unfairly receiving a second trial based on an error which he injected into the proceedings." *People v. Smith*, 406 Ill. App. 3d 879, 886-87 (2010). Mr. Celani argues the trial court's award bore no rational relationship to any estimate of future maintenance. We note, however, that he did not give the court the ability or opportunity to accurately assess his income or debts. As such, the trial court did not err in awarding property to Ms. Celani in lieu of maintenance. It is noteworthy that the trial court gave a fairly lengthy rendition of the relative financial positions of the parties and their credibility. This demonstrates that the court carefully considered the appropriate factors in making the award.

¶ 22                              Division of Marital Property

¶ 23     Mr. Celani next argues that the trial court's division of marital property was an abuse of discretion. He contends the property award improperly gave Ms. Celani most of the marital property (81% by his calculation). He also argues the court left him with most of the marital debt.

¶ 24     "The touchstone of whether apportionment of marital property was proper is whether it is equitable in nature; each case resting on its own facts." *In re Marriage of Joynt*, 375 Ill. App. 3d 817, 821 (2007). "The Act does not require that property be distributed with mathematical equality." *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 661 (2008). "Accordingly, depending upon the circumstances of the case 'an unequal division of [marital] property may *** be appropriate.' " *Heroy*, 385 Ill. App. 3d at 661 (quoting *In re Marriage of Kristie*, 156 Ill. App. 3d 821, 825 (1987)). After considering all relevant factors, a trial court may use its discretion to "distribute the property in whatever proportion it deems equitable, and a reviewing court will not disturb that decision absent a showing that there was an abuse of that discretion." *In re Marriage*

*of Wentink*, 132 Ill. App. 3d 71, 75 (1984). An abuse of discretion "occurs only where the court

acted arbitrarily and without the employment of conscientious judgment or exceeded the bounds

of reason and ignored recognized principles of law so that substantial injustice resulted." *Wentink*,

132 Ill. App. 3d 71, 75.

¶ 25    Section 503(d) of the Act (750 ILCS 5/503(d)(4), (d)(8), (d)(10), (d)(11)) provides, in

relevant part, that:

"[The trial court] shall divide the marital property without regard to marital misconduct in

just proportions considering all relevant factors, including:

* * *

(4) the duration of the marriage;

* * *

(8) the age, health, station, occupation, amount and sources of income,

vocational skills, employability, estate, liabilities, and needs of each of the parties;

* * *

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of

capital assets and income."

¶ 26    Here, the trial court, in its order, stated that a disproportionate award of property in lieu

of maintenance was the "only realistic way to provide for the parties' futures." The court found

that Ms. Celani was disabled, unable to work, and had limited income from her Social Security;

whereas, it appeared Mr. Celani was able to earn in excess of $100,000. Moreover, the trial court

was unable to completely assess Mr. Celani's income due to his failure to file income taxes for

the past seven years and his incomplete answers when asked about his finances. The court noted, as a relevant factor, that Mr. Celani "routinely fail[ed] to satisfy his financial obligations including payment of income taxes, vehicle payments, life insurance policy premiums, and office space rent." The parties had also been married for 39 years, which the trial court took into consideration. It was apparent to the trial court that Ms. Celani has substantial financial needs due to her health. The court determined the best way to distribute the property was disproportionately in favor of Ms. Celani. This distribution avoided reliance on timely maintenance payments from Mr. Celani, which the court suggested would be uncertain. The court noted that its ruling would resolve any maintenance obligations by Mr. Celani and allow the parties to plan their futures effectively.

¶ 27    Mr. Celani's argument on this issue seems to suggest that the property award could only be seen as a replacement of his maintenance obligation. However, a full reading of the statute states, the trial court must determine "whether the apportionment is in lieu of or in addition to maintenance." 750 ILCS 5/503(d)(10). It is just one of the statutory factors for the court to consider when awarding property. The trial court could have given a disproportionate award in addition to maintenance, and it would not necessarily have been an abuse of discretion, so the determination does not end with calculating the maintenance which Ms. Celani was due. Notably, the trial court in this case did not award maintenance *in addition* to the property. Therefore, we cannot say the trial court abused its discretion in its analysis of the statutory factors, as well as the relevant factors of Mr. Celani's historical failure to meet financial obligations and his lack of clarity about his income.

¶ 28    In terms of Mr. Celani's argument about the debt allocation, the parties had three debts: (1)

an outstanding landscaping bill for $1,250; (2) a doctor's bill for one of their children for $608; and (3) past due federal and state income taxes for the income made by Mr. Celani between 2011 and 2018. The court assigned the landscaping and medical debt to Ms. Celani and held her free from any liability with respect to the income tax debt. During the trial, Mr. Celani did not provide any information about the amount of income taxes that he owed, though the court made repeated efforts to obtain that information. As such, the court was in no position to assess the total amount of his debt. Without giving this court any figures or evidence supporting his contention, Mr. Celani argues that the amount of the debt's value exceeds his disposable income. More importantly, he did not give any information to the trial court which would have allowed the court to make an assessment of the amount of the debt. Additionally, Mr. Celani created the tax debt and then refused to provide information regarding his income. It would be inequitable to hold Ms. Celani liable for a debt over which she had no control. Thus, the trial court did not err in its allocation of the marital debt. Therefore, as the court did not abuse its discretion in its division and award of marital property, we affirm its judgment.

¶ 29                                    Attorney Fees

¶ 30    The final argument Mr. Celani makes is that the trial court abused its discretion by awarding Ms. Celani attorney fees for the appeal. He argues that the court abused its discretion since Ms. Celani had the means to afford an attorney given the court's property award.

¶ 31    Before addressing the merits of this issue, we *sua sponte* raise the question of whether the trial court had jurisdiction award attorney fees to Ms. Celani to defend the appeal.  We note that Illinois law has long established that:

    "Upon filing a notice of appeal, the trial court is divested of jurisdiction to enter any order

involving a matter of substance, and the jurisdiction of the appellate court attaches

*instanter*. While the trial court retains jurisdiction to determine matters arising independent

of and collateral to the judgment, it is restrained from entering any order which would

modify the judgment or its scope." (Citations omitted.) *In re Marriage of Sawyer*, 264 Ill.

App. Ed 839, 850 (1994).

Clearly the appeal and its attendant award of attorney fees was collateral to the judgment in this

case, and as such, the trial court had jurisdiction to award Ms. Celani attorney fees. Moreover, *In*

*re Marriage of Talty*, 166 Ill. 2d 232, 242 (1995), addressed a similar issue, where the appellant

argued that the trial court lost jurisdiction to award appellate attorney fees after the filing of cross

notices of appeals by the parties. Our supreme court held section 508(a) of the Act expressly

authorizes the circuit court to award attorney fees including fees for the defense of an appeal *after*

a notice of appeal is filed. Therefore, the trial court in this case, had jurisdiction to address the

issue of Ms. Celani's attorney fees for defense of the appeal.

¶ 32    Turning to the question of the propriety of the trial court's award of attorney fees to Ms.

Celani, we look to the Act. Section 508 of the Act states that the trial court, after considering the

financial resources of the parties, may order a party to pay the other party's attorney fees for "[t]he

defense of an appeal of any order or judgment under this Act." 750 ILCS 5/508(a), (a)(3) (West

2020). "The party seeking an award of attorney fees must establish her inability to pay and the

other spouse's ability to do so." *In re Marriage of Schneider*, 214 Ill. 2d 152, 174. "[H]owever, it

is not necessary for the spouse seeking the fees to divest her capital assets [citations], deplete her

means of support, or undermine her economic stability [citations], in order to pay [attorney fees]."

*In re Marriage of Weinberg*, 125 Ill. App. 3d 904, 919 (1984). "It is clear the inability to pay

standard was never intended to limit awards of attorney fees to those situations in which a party could show a $0 bank balance." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19. "[A] trial court's decision to award or deny fees will be reversed only if the trial court abused its discretion." *Schneider*, 214 Ill. 2d 152, 174.

¶ 33     Mr. Celani does not dispute his ability to pay attorney fees, so the matter turns on whether Ms. Celani has the ability to pay her own attorney fees. The trial court had intimate knowledge of Ms. Celani's financial situation given the evidence adduced at trial. The court in its order awarded Ms. Celani property in lieu of maintenance, as that would allow her to plan her future accordingly. The court went through a *detailed* analysis in its approximately 15-page written judgment and issued the property award. The judgment explicitly noted that the award was "money for the rest of [Ms. Celani's] life" based on her inability to work and her disability. It necessarily follows that, in ruling on Ms. Celani's petition for attorney fees to defend this appeal, the court considered that the cost would come out of those limited resources. Under these facts and circumstances, we cannot say the trial court abused its discretion in finding that Ms. Celani was unable to afford her attorney fees for an appeal, as it would likely have required liquidation of assets, which in turn would have affected her financial stability in the future. Therefore, we affirm the trial court's award of attorney fees to Ms. Celani for this appeal.

¶ 34                                    CONCLUSION

¶ 35     For the foregoing reasons, we affirm the circuit court of Cook County's judgments in its award of property in lieu of maintenance and the award of attorney fees for the appeal.

¶ 36     Affirmed.